## STATE OF CONNECTICUT *v.* WILLIAM OUTLAW, JR. (13753)

PETERS, C. J., SHEA, CALLAHAN, GLASS and BORDEN, Js.

Argued September 27—decision released November 20, 1990

*Ira B. Grudberg,* with whom were *Steven D. Ecker* and *David T. Grudberg,* for the appellant (defendant).

*Susan C. Marks,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

GLASS, J. The state charged the defendant, William Outlaw, Jr., with the crime of murder in the first degree in violation of General Statutes § 53a-54a (a),[1] assault in the first degree in violation of General Statutes §§ 53a-59 (a) (1) and 53a-8,[2] and attempted murder in violation of General Statutes §§ 53a-54a (a) and 53a-49 (a).[3] A jury found the defendant guilty as

---

[1] "[General Statutes] Sec. 53a-54a. MURDER DEFINED. AFFIRMATIVE DEFENSES. EVIDENCE OF MENTAL CONDITION. CLASSIFICATION. (a) A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 53a-59 (a) (1) provides: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument."

"[General Statutes] Sec. 53a-8. CRIMINAL LIABILITY FOR ACTS OF ANOTHER. A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[3] "[General Statutes] Sec. 53a-49. CRIMINAL ATTEMPT: SUFFICIENCY OF CONDUCT: RENUNCIATION AS DEFENSE. (a) A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he: (1) Intentionally engages in conduct which would constitute the crime if attendant circumstances were as he believes them

charged. Thereafter, the trial court acquitted the defendant of assault in the first degree, but convicted him of murder and attempted murder. He was sentenced to a total effective term of sixty years imprisonment, and this appeal followed.

On appeal, the defendant claims that the trial court should not have admitted into evidence: (1) the testimony of two police officers describing the extrajudicial identification of the defendant from a photographic array by the victim of the attempted murder, Fitzroy Phillip; and (2) the transcript of the probable cause hearing at which Phillip identified the defendant in the courtroom. We conclude that the trial court should have excluded the police officers' extrajudicial identification testimony, and we therefore reverse the judgment and remand the case for a new trial.

The jury could reasonably have found the following facts. At approximately 1:15 a.m. on September 24, 1988, New Haven police officers were dispatched to investigate several gun shots fired in the Church Street South Project area in New Haven, an area known for its high volume narcotics activity. Upon their arrival, the officers discovered Sterling Williams lying in a pool of blood and suffering from fatal gunshot wounds. Two guns and approximately one thousand dollars in cash were later found on Williams' person.

On the same morning, at approximately 1:20 a.m., a woman residing at Salem Street, New Haven, awoke to the sound of Fitzroy Phillip pounding on her back door. The woman's mother called the police, and then allowed Phillip, who was bleeding profusely, to enter her home. Phillip was taken to the hospital and treated

to be; or (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

for multiple gunshot wounds to the back, and two gunshot wounds to the leg. At the hospital, in the presence of police officers Gilbert Burton and Joseph Pettola, Phillip identified the defendant from a photographic array.

On October 18, 1988, the trial court conducted a hearing in probable cause at which Phillip identified the defendant in the courtroom as the person who had shot both him and Williams. Phillip also testified to the following facts. He had ridden in a truck with Williams to the Church Street area at approximately 1 a.m. on September 24, 1988, and Williams had gotten out of the truck to speak with the defendant, who was standing among a group of six or seven black males near an abandoned car. Five minutes later, Phillip had approached the group, and had stood within a few inches of the defendant and Williams. A few minutes later, Phillip had seen the defendant pull out a gun and shoot Williams in the head. The defendant had then shot Phillip in the leg, and as Phillip fled, the defendant had shot him once more in the leg and three times in the back.

Sometime after the probable cause hearing, the state learned that Phillip had left Connecticut, possibly for the Brooklyn, New York area. An attempt by the New York police to locate Phillip proved fruitless. Nonetheless, at trial, the state offered the testimony of Burton and Pettola describing Phillip's identification of the defendant from the photographic array. The defendant moved to suppress the testimony as hearsay and, in the alternative, on the ground that the unnecessarily suggestive nature of the photographic array had violated his constitutional right to due process. The trial court denied the defendant's motion, ruling that the photographic array was not unnecessarily suggestive and that the police officers' testimony, although hearsay, was admissible under the exception to the hear-

say rule for extrajudicial statements of identification, as well as the "residual" exception to the rule.

The state also sought at trial to introduce the transcript of the probable cause hearing. The defendant promptly moved to suppress the transcript, arguing that: (1) Phillip's identification of the defendant at the probable cause hearing was tainted by the earlier due process violations inherent in the photographic identification procedure; and (2) his inability to cross-examine Phillip at trial regarding the photographic procedure and the extent of the alleged taint violated his constitutional rights to confrontation. The trial court denied the defendant's motion, and permitted the transcript to be read to the jury. These two evidentiary rulings form the basis of the defendant's claims on appeal.

## I

The defendant's first claim stems from Phillip's extrajudicial identification of him from a photographic array. The identification occurred at the hospital, approximately twenty-four hours after Phillip was shot. After approaching Phillip in his hospital bed, Burton and Pettola asked Phillip to examine a ring-bound tray into which they had inserted a photograph of the defendant among 249 other photographs of black males. They placed the tray on Phillip's chest, and flipped the pages for him. Both officers testified at trial that Phillip was alert and conscious, and that he carefully examined the photographs without comment until, upon observing the defendant's photograph, he pointed and unhesitatingly stated: "This is the guy." Pettola testified that Phillip was 100 percent certain of his identification.

The defendant maintains that the officers' testimony describing this identification was inadmissible hearsay. We agree that the testimony should have been excluded as hearsay, not falling within any exception to the rule,

and accordingly we conclude that a new trial is necessary.[4] We shall consider the trial court's alternate grounds for admitting the officers' testimony in sequence.

## A

The trial court's first ground for admitting the officers' testimony was that it fell within our exception to the hearsay rule for extrajudicial statements of identification. When arguing at trial for admission of the testimony, the state relied in large part upon *State* v. *Townsend,* 206 Conn. 621, 539 A.2d 114 (1988), wherein we reaffirmed in a different context our holding in *State* v. *McClendon,* 199 Conn. 5, 505 A.2d 685 (1986), that an exception to the hearsay rule for prior identification testimony was warranted where "the identifications were reliable and the witnesses were available for cross-examination." Id., 11. The trial court's ruling admitting the testimony was premised in part on the proposition that Phillip's availability for cross-examination at the probable cause hearing sufficed as a substitute for exposure to cross-examination before the jury. We disagree.

A consideration integral to our holding in *McClendon* was that the declarants testified at trial to the facts and circumstances surrounding their extrajudicial identifications, and thus defense counsel had the opportunity *at trial* to cross-examine them, procedurally

---

[4] The defendant also argues on appeal that the trial court should have excluded the officers' testimony because the unnecessarily suggestive nature of the photographic identification procedure violated his constitutional rights to due process of law. Although our decision with respect to the defendant's hearsay claim obviates the necessity of addressing his due process claim as a ground for exclusion of the officers' testimony, we note that because the defendant has advanced the identical argument as the basis for exclusion of the transcript of Phillip's testimony at the probable cause hearing, we have addressed the claim in part II A of our opinion.

restricted only by the court's exercise of discretion. Id., 9.[5] Similarly, in *Townsend,* although the declarant did not testify to the facts and circumstances of his extrajudicial identification on direct examination, he was available for cross-examination *at trial* when hearsay evidence of that identification was offered by the state. *State* v. *Townsend,* supra, 623–24; see also *State* v. *Weidenhof,* 205 Conn. 262, 274 A.2d 545 (1987).

In this case, Phillip did not testify at trial to the facts and circumstances surrounding his extrajudicial identification. We therefore conclude that he was not "available for cross-examination" within the meaning of that phrase in *McClendon.* Nor do we believe that Phillip's availability for cross-examination at the probable cause hearing renders the officers' testimony admissible under *Townsend.* A fundamental, and we think dispositive, difference between the facts of *Townsend* and those in the case at bar is that the state did not offer the officers' testimony at the probable cause hearing, at which Phillip testified so that he could have been cross-examined about his previous identification of the defendant from the photographic array.

We therefore hold that the trial court should not have admitted the officers' testimony under the exception to the hearsay rule for extrajudicial statements of identification. We turn now to the trial court's alternate ground for admitting the testimony.

### B

The trial court stated as its alternate ground for admitting the officers' testimony: "[M]ost of the safe-

[5] In a number of jurisdictions, extrajudicial statements of identification are admissible under an exception to the hearsay rule only where the declarant testifies and is available for cross-examination at trial. See, e.g., *People* v. *Mayfield,* 23 Cal. App. 3d 236, 239, 100 Cal. Rptr. 104 (1972); *State* v. *Harris,* 711 S.W.2d 881 (Mo. 1986) (en banc); *State* v. *Shannon,* 125 N.H. 653, 484 A.2d 1164 (1984); *Commonwealth* v. *Doa,* 381 Pa. Super. 181, 553 A.2d 416 (1988); cf. *United States* v. *Owens,* 484 U.S. 554, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988); Fed. R. Evid. 801 (d) (1) (c).

guards that normally go with the exception to the hearsay rule do exist. It was given very close in time after the event, and it would appear to be reliable." The state urges us to uphold this ruling under the authority of *State* v. *Sharpe,* 195 Conn. 651, 491 A.2d 345 (1985). In *Sharpe,* we held that hearsay inadmissible under one of the traditional exceptions to the hearsay rule may be admitted if (1) there is a "reasonable necessity for the admission of the statement," and (2) the statement is "supported by the equivalent guarantees of reliability and trustworthiness essential to other evidence admitted under the traditional hearsay exceptions." Id., 664.

The circumstances present in this case disclose that Phillip's statement was not imbued with guarantees of reliability and trustworthiness sufficient to support its admission. First, unlike the declarant in *Sharpe,* Phillip was not "a witness at the trial and available for cross-examination." Id., 665. Cross-examination, "the greatest legal engine ever invented for the discovery of truth," was therefore absent in this case with respect to the extrajudicial identification. 5 J. Wigmore, Evidence (Chadbourn Rev. 1974) § 1367, p. 32. The shortness of time between an event and the statement it provokes is ordinarily a significant indicator of reliability where the circumstances suggest that the statement was not the product of reflective thought. See C. McCormick, Evidence (3d Ed. 1984) § 297, pp. 856–57. We cannot presume, however, that the excitement of the shoot-out suspended Phillip's powers of reflection and fabrication because officers testified that Phillip was alert, conscious and careful in his identification. See C. McCormick, supra, § 297, p. 855; see also *State* v. *Hughes,* 120 Ariz. 120, 584 P.2d 584 (1978).

Lack of knowledge as to Phillip's role in the events at the Church Street projects, in addition, leaves us unable to conclude that " 'the circumstances are such that

a sincere and accurate statement would naturally be uttered, and no plan of falsification be formed.' '' *State* v. *Sharpe,* supra, 665, quoting 5 J. Wigmore, supra, § 1422. Whatever Phillip's role, it was certainly unlike that of the *Sharpe* declarant, a disinterested neighbor whose role in the crime was limited to copying down a license plate number and reporting it to the police. See *State* v. *Sharpe,* supra.

In the absence of circumstances surrounding Phillip's statement to the police officers that establish a "motivational basis for truth-telling" equivalent to those associated with the traditional exceptions to the hearsay rule, we hold that the officers' testimony was hearsay not falling within any exception to the hearsay rule, and should have been excluded. *State* v. *Apperson,* 85 Or. App. 429, 433, 736 P.2d 1026 (1987). In view of the state's emphasis upon the officers' testimony in its closing argument, and the scant additional evidence implicating the defendant in the crime, we agree with the defendant that the officers' testimony was improperly admitted as corroboration on the issue of identity. Thus, the admission of the testimony probably prejudiced the jury as to his guilt. See *State* v. *Ruth,* 181 Conn. 187, 196–97, 435 A.2d 3 (1980); *State* v. *McClain,* 171 Conn. 293, 300, 370 A.2d 928 (1976).

Therefore, we must reverse the judgment of conviction and remand the case for a new trial. Because the defendant's remaining claim is likely to arise during retrial, we review it here.

## II

The defendant advances two arguments in support of his claim that the trial court should have excluded the transcript of the probable cause hearing at which Phillip identified the defendant in the courtroom. First, he contends that the admission of the transcript violated his constitutional right to due process of law. In

the alternative, he claims that the admission of the transcript violated his constitutional right to confrontation.[6] We will consider these claims in turn.

### A

The defendant's claim that the transcript of Phillip's testimony at the probable cause hearing should have been excluded on due process grounds is rooted in the earlier, photographic identification procedure employed by the police officers. He initially argues that the procedure was unnecessarily suggestive, in violation of his constitutional right to due process of law. This allegedly unconstitutional procedure, he maintains, tainted Phillip's later in-court identification testimony at the probable cause hearing, thus rendering the admission of the transcript of that testimony a further deprivation of his due process right.

In determining whether the extrajudicial identification procedure violated the defendant's due process right, we must conduct an ad hoc, two-pronged inquiry: " ' " '[F]irst, it must be determined whether the identification procedure was unnecessarily suggestive, and second, if it is found to be so, it must be determined whether the identification was nevertheless reliable based on an examination of the "totality of the circumstances." ' " ' " *State* v. *Monteeth,* 208 Conn. 202, 206, 544 A.2d 1199 (1988), quoting *State* v. *Theriault,* 182 Conn. 366, 371–72, 438 A.2d 432 (1980). An identification procedure is unnecessarily suggestive when it " ' " 'give[s] rise to a very substantial likelihood of irreparable misidentification.' " ' " *State* v. *Fullwood,* 193 Conn. 238, 243–44, 476 A.2d 550 (1984), quoting

---

[6] Although the defendant claims that the admission of the transcript violated his rights to confrontation under both the United States and the Connecticut constitutions, our analysis of the claimed violation rests upon the United States constitution, because he has not adequately briefed the state constitutional claim.

*Simmons* v. *United States,* 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968).

In claiming that the extrajudicial identification procedure was unnecessarily suggestive, the defendant focuses on two characteristics of the photographs contained in the array. He argues first that the date displayed on the placard in the foreground of his photograph, April 10, 1986, caused it to stand out from the others because 245 of the photographs were arranged in roughly chronological order and dated from October through December, 1983, while only three photographs other than his were marked with dates from subsequent years.[7] In addition, the defendant claims that the format of his photograph was unduly distinctive because the date-bearing placards in his and two other photographs were flat, shiny, and exhibited information in smaller characters and in a different order than the placards in the remaining photographs, which were ridged and non-reflective.

We do not agree that these slight differences rendered the photographic array unnecessarily suggestive. Like differences in size and color composition of photographs, we hold that marginal discrepancies in texture, lettering and the order of information on placards in photographs do not automatically, in and of themselves, render an array unnecessarily suggestive. Cf. *State* v. *Boscarino,* 204 Conn. 714, 727, 529 A.2d 1260 (1987). As for the date displayed on the placard in the defendant's photograph, it was barely readable due to overexposure, as were many of the dates displayed on the placards in the 1983 photographs. The date was not, moreover, meaningfully related to September 24, 1988, the date the crime occurred, nor was it the most recent of all of the dates. Compare *State* v. *Cubano,* 203 Conn.

---

[7] The three other photographs were dated April 28, 1987, April 17, 1987, and December 21, 1985.

81, 93, 523 A.2d 495 (1987); *State* v. *Vaughn,* 199 Conn. 557, 565, 508 A.2d 430, cert. denied, 479 U.S. 989, 107 S. Ct. 583, 93 L. Ed. 2d 585 (1986); *State* v. *Davis,* 198 Conn. 680, 683, 504 A.2d 1372 (1986). Absent significant information displayed on the placard, it is reasonable to assume that Phillip selected the defendant's photograph on the basis of his scrutiny of the characteristics of the individual depicted therein, rather than by focusing on the placard information or its physical attributes. See *State* v. *Humphrey,* 129 N.H. 654, 531 A.2d 329 (1987). We conclude, therefore, that the photographic identification procedure was not unnecessarily suggestive.

Having so concluded, we need not analyze the factors determining the reliability of the extrajudicial identification. See *State* v. *Holliman,* 214 Conn. 38, 49, 570 A.2d 680 (1990). Nor need we consider whether Phillip's subsequent in-court identification at the probable cause hearing was tainted by the extrajudicial identification. "Since the initial identification of the defendant . . . was not the result of a suggestive identification procedure, there was no constitutional infirmity in the identification process." *State* v. *Miller,* 202 Conn. 463, 474, 522 A.2d 249 (1987).

## B

The defendant also attacks the admission of the transcript of Phillip's testimony at the probable cause hearing as violative of his right to confrontation under the United States constitution. Cases involving the admission of an unavailable declarant's prior statements of identification "[give] rise to Confrontation Clause issues 'because hearsay evidence was admitted as substantive evidence against the [defendant].' " *Delaware* v. *Fensterer,* 474 U.S. 15, 18, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985), quoting *Tennessee* v. *Street,* 471 U.S. 409, 413, 105 S. Ct. 2078, 85 L. Ed. 2d 425 (1985).

According to the defendant, the trial court should have excluded the transcript because the defendant was unable, due to Phillip's absence at trial, to explore with "full and fair" cross-examination *at trial* the extent to which Phillip's identification of the defendant at the probable cause hearing had been influenced by the earlier, allegedly unconstitutional photographic identification procedure. In reply, the state argues that Phillip's testimony was properly admitted under the "former testimony" exception to the hearsay rule, and was coupled with "indicia of reliability" adequate to satisfy the demands of the confrontation clause. We agree with the state.

The sixth amendment to the United States constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ."[8] While a literal interpretation of the confrontation clause could bar the substantive use of any hearsay statement made by an unavailable declarant, the United States Supreme Court has rejected that view as "unintended and too extreme." *Ohio* v. *Roberts,* 448 U.S. 56, 63, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980); see also *Bourjaily* v. *United States,* 483 U.S. 171, 182, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987). The confrontation clause, however, does operate to "[bar] the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." *Idaho* v. *Wright,* 497 U.S. , 110 S. Ct. 3139, 3146, 111 L. Ed. 2d 638 (1990).

In *Ohio* v. *Roberts,* supra, the United States Supreme Court fashioned a two-part test designed to protect a criminal defendant's right to confrontation and yet

---

[8] The sixth amendment to the United States constitution applies to the states through the fourteenth amendment. *Pointer* v. *Texas,* 380 U.S. 400, 405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

facilitate the admission of prior statements of an unavailable declarant under an exception to the hearsay rule. "First . . . [t]he prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." Id., 65. Even after the declarant is satisfactorily shown to be unavailable, "his statement is admissible only if it bears adequate 'indicia of reliability' "; id., 66; which serve to "afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement." *California* v. *Green,* 399 U.S. 149, 160–61, 90 S. Ct. 1930, 26 L. Ed. 2d 489 (1970).

"Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Ohio* v. *Roberts,* supra, 66. By engaging in a search for "particularized guarantees of trustworthiness" in *Roberts,* the United States Supreme Court implicitly held that the exception to the hearsay rule for statements given by an unavailable declarant at a preliminary hearing was not so firmly rooted as to obviate further inquiry and search of the record. Thus, we must engage in a similar search here.

A review of the record indicates that Phillip's testimony at the probable cause hearing bears adequate indicia of reliability to warrant submission of the transcript to the jury. The record indicates that Phillip's testimony was given under oath, subject to criminal penalties for perjury. See *California* v. *Green,* supra, 165. Furthermore, his testimony was given before a judicial tribunal that kept an accurate judicial record of the proceedings. See id. The defendant was present in court, and he was represented by the same counsel who later represented him at trial. See id.

In addition, contrary to the defendant's assertions, we believe that defense counsel tested Phillip's statements at the probable cause hearing with "the equivalent of significant cross-examination."[9] *Ohio* v. *Roberts,* supra, 70. The transcript of the probable cause hearing reveals that defense counsel exposed the details of what Phillip claimed to have observed at Church Street, the inaccuracies in his memory of the event, and the basis for his identification of the defendant in the courtroom. Thus, defense counsel's cross-examination "comported with the principal *purpose* of cross-examination: to challenge 'whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed.' " Id., 71, quoting D. Davenport, "The Confrontation Clause and the Co-Conspirator Exception in Criminal Prosecutions: A Functional Analysis," 85 Harv. L. Rev. 1378 (1972).

For example, defense counsel asked questions at the probable cause hearing about Phillip's reasons for going to the Church Street projects, and his reasons for getting out of the truck, to which Phillip replied "I don't know," and "no reason," respectively. Phillip also divulged at defense counsel's request the duration of his presence at the Church Street projects, and the extent of his relationship with Williams. Defense counsel elicited, further, that although Phillip claimed to have observed several other men at the scene, he could

---

[9] Although we have determined, in Part I of our opinion, that Phillip's testimony at the probable cause hearing was an insufficient substitute for testimony at trial regarding the extrajudicial identification, we emphasize that Phillip's extrajudicial identification possessed none of the indicia of reliability inherent in testimony given before a judicial tribunal such as the oath, potential penalties of perjury, the existence of a judicial record, and, in this case, the presence of the defendant.

not recall how tall or heavy they were because he "was just looking." Phillip also stated that he stood within a few inches of the defendant and Williams, and that they were talking, but, in response to defense counsel's inquiries, admitted that he could not remember the subject of their conversation. Moreover, despite his proximity to the defendant, Phillip's abbreviated description of the defendant before pointing to him in the courtroom was "240, 260, Black."

The defendant argues that at the probable cause hearing he was unable to cross-examine Phillip about his prior extrajudicial photographic identification of the defendant because (1) he did not have access to the photographs until the trial, and (2) even if he had had sufficient information at the hearing to challenge that prior identification, General Statutes § 54-46a (b)[10] would have barred him from doing so. We disagree.

First, the record discloses that, although the defendant did not then have the photographs available to him, he did know from the police report, which he did have, that Phillip had made a prior extrajudicial photographic identification. Second, § 54-46a (b) bars suppression and discovery motions in probable cause hearings, and the trial court has broad discretion under that statute concerning the scope of cross-examination in such hearings. Third, and most important, the only aspect of cross-examination that the defendant claims to have lost in this respect concerns Phillip's prior extrajudicial identification. While that may or may not have been helpful to the defendant, given the trial court's and our conclusion that the prior extrajudicial identification was not suggestive, and given the broad scope of cross-examination that the defendant did exercise, we cannot

---

[10] General Statutes § 54-46a (b) provides in relevant part: "No motion to suppress or for discovery shall be allowed in connection with such hearing."

say that the absence of cross-examination regarding the prior extrajudicial identification was fatal to the defendant's right of confrontation.

In light of the cross-examination conducted at the probable cause hearing and the circumstances surrounding Phillip's testimony, we believe that the testimony possessed indicia of reliability sufficient for the jury to evaluate its truth. We thus decline to adopt the defendant's position that "the equivalent of significant cross-examination" can take place at a preliminary hearing only when a defendant's opportunity to cross-examine is identical to that afforded at trial. See *United States* v. *Haywood,* 658 F.2d 445 (6th Cir. 1981); *Gonzalez* v. *Scully,* 578 F. Sup. 1063 (S.D.N.Y.), aff'd, 738 F.2d 418 (2d Cir.), cert. denied, 469 U.S. 1020, 105 S. Ct. 438, 83 L. Ed. 2d 363 (1984); *State* v. *Smith,* 415 A.2d 570 (Me. 1980). " '[A]n insistence upon the equivalent of a present opportunity to cross-examine disregards the other elements of special reliability in former testimony such as the oath, the solemnity of the occasion, and in the case of transcribed testimony, the accuracy of reproduction of the words spoken.' " *State* v. *Parker,* 161 Conn. 500, 504, 289 A.2d 894 (1971), quoting C. McCormick, Evidence (1954) § 230, p. 481. We therefore conclude that the trial court properly admitted the transcribed testimony of Phillip's identification of the defendant at the probable cause hearing into evidence at the defendant's trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other justices concurred.