STATE OF CONNECTICUT *v.* JACOB CRUMP
(14555)

Foti, Schaller and Freedman, Js.

Argued April 16—officially released September 24, 1996

*Gwen E. Murray*, certified legal intern, with whom, were *Kyong C. Yi*, certified legal intern, and, on the brief, *Richard Emanuel*, assistant public defender, for the appellant (defendant).

*Donald A. Browne*, state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), carrying a pistol on his person without a permit in violation of General Statutes §§ 29-35 and 29-37 (b), and conspiracy to commit murder in violation

of General Statutes §§ 53a-48 and 53a-54a (a).[1] The defendant claims that the evidence was insufficient to establish his guilt of the crimes charged, and that his conviction of the crime of conspiracy to commit murder was a legal impossibility. He further claims that the trial court improperly admitted the probable cause hearing testimony of a witness in violation of the defendant's confrontation and due process rights.[2] We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On August 14, 1991, at approximately 2 a.m., one of two victims, Demond Braswell, who was sixteen years old, left his apartment in building sixteen at Father Panik Village in Bridgeport. He and four others planned to go to a local store to buy beer and food. As the five left building sixteen, they agreed to split into two groups. Demond Braswell, Tremayne O'Brien and Maunick Braswell proceeded between buildings sixteen and twenty, while the others proceeded in the opposite direction along Crescent Avenue.

As the three walked, they observed the defendant, Jacob Crump, standing in a doorway to their left at the south corner of building sixteen and Stefan Bagley, standing to their right at the end of building twenty. Bagley, who was carrying a long gun, stepped forward and said, "Freeze, don't move." Maunick Braswell immediately ran ahead, and the two victims, Demond Braswell and O'Brien retreated toward building sixteen. Bagley and Crump pursued the two retreating men, firing their weapons at them. The victims reentered building sixteen and more shots were fired therein.

[1] The defendant was found not guilty of the additional charges of murder in violation of General Statutes § 53a-54a (a), and assault in the second degree in violation of General Statutes § 53a-60 (a) (2).

[2] The defendant's claims are made under the fifth, sixth and fourteenth amendments to the United States constitution, and article first, §§ 8 and 9, of the Connecticut constitution.

They returned to Demond Braswell's apartment to seek assistance. O'Brien had been shot twice, once in the left leg and once in the right thigh. Braswell had been shot once in the upper abdomen. The two victims were taken by ambulance to Bridgeport Hospital. O'Brien was treated and released. Demond Braswell later died as a result of his gunshot wound.

Braswell's fatal wound was produced by a ten millimeter copper jacketed bullet. Three ten millimeter bullet casings were recovered from the area south of building sixteen, between buildings sixteen and twenty, where the defendant had been standing. Three more .45 caliber bullet casings were found adjacent to the south end of building twenty, and two additional casings were found in the stairway leading to the Braswell apartment.

The defendant was a fugitive until March 4, 1992, when he was arrested in Hartford on an unrelated matter. At that time, the defendant was identified through fingerprinting, after he initially gave the police a false name.

I

The defendant alleges that the evidence was insufficient to sustain his convictions. " 'When reviewing a sufficiency of the evidence claim, we first examine the evidence in the light most favorable to upholding the jury's verdict. *State* v. *Avis*, 209 Conn. 290, 309, 551 A.2d 26 (1988), cert. denied, 489 U.S. 1097, 109 S. Ct. 1570, 103 L. Ed. 2d 937 (1989); *State* v. *Rice*, 25 Conn. App. 646, 650, 595 A.2d 947 (1991). We then determine on the basis of the facts established and the inferences that reasonably could be drawn from those facts whether the jury reasonably could have concluded that the cumulative effect of the evidence established the defendant's guilt beyond a reasonable doubt. *State* v. *Famiglietti*, 219 Conn. 605, 609, 595 A.2d 306 (1991);

*State* v. *Hopes*, 26 Conn. App. 367, 376, 602 A.2d 23, cert. denied, 221 Conn. 915, 603 A.2d 405 (1992). We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. *State* v. *Robinson*, 213 Conn. 243, 254, 567 A.2d 1173 (1989).' *State* v. *Lago*, 28 Conn. App. 9, 30, 611 A.2d 866, cert. denied, 223 Conn. 919, 614 A.2d 826 (1992). Our inquiry into whether the evidence in the record would support a finding of guilt beyond a reasonable doubt does not require us to ask if we believe that the evidence established guilt beyond a reasonable doubt, but rather if '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' . . . *State* v. *Boykin*, 27 Conn. App. 558, 563–64, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992). Once a defendant has been found guilty of the crime charged, we conduct our judicial review of all of the evidence in the light most favorable to the prosecution. Id., 564." (Emphasis in original.) *State* v. *Hamilton*, 30 Conn. App. 68, 71–72, 618 A.2d 1372 (1993), aff'd, 228 Conn. 234, 636 A.2d 760 (1994).

The jury has the opportunity to observe the conduct, demeanor and attitude of the witnesses and to gauge their credibility. *State* v. *Stepney*, 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). Jurors are not expected to lay aside matters of common knowledge or their own observations and experiences, but rather, to apply them to the facts as presented to arrive at an intelligent and correct conclusion. *State* v. *Cintron*, 39 Conn. App. 110, 119, 665 A.2d 95 (1995).

A

The defendant first argues that the evidence was insufficient to convict him of attempted murder because the jury could not reasonably have concluded that the

defendant shot at O'Brien and that he did so with the specific intent to cause O'Brien's death. We disagree.

O'Brien testified that the defendant had a gun that he was shooting at O'Brien and Demond Braswell as they fled. O'Brien's testimony also confirmed that the first bullet to hit him came from the hallway where he had observed the defendant. Intent to cause the death of a person is an element of the crime and must be proved beyond a reasonable doubt. *State* v. *Mejia*, 233 Conn. 215, 224, 658 A.2d 571 (1995). Intent may, however, be inferred from conduct; *State* v. *Greenfield*, 228 Conn. 62, 77, 634 A.2d 879 (1993); and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. *State* v. *Raguseo*, 225 Conn. 114, 119, 622 A.2d 519 (1993).

From the evidence presented, the jury could reasonably have inferred, under the particular circumstances, that the defendant and Bagley had set up an ambush and fired their guns both at the scene and while they pursued the fleeing victims, and that the defendant intended to kill O'Brien. The jury was free to infer that intent from the cumulative effect of all the circumstantial evidence. In considering the evidence introduced in this case, the jury was not " 'required to leave common sense at the courtroom door.' " *State* v. *Patterson*, 35 Conn. App. 405, 414, 646 A.2d 258, cert. denied, 231 Conn. 930, 649 A.2d 254 (1994). The jury was free to infer that the defendant and Bagley purposefully armed and positioned themselves, firing simultaneously at the same victims, with the intent to kill O'Brien. See *State* v. *Diaz*, 237 Conn. 518, 542, 679 A.2d 902 (1996).

### B

The defendant claims that the evidence was insufficient to convict him of conspiracy to commit murder. "To prove the crime of conspiracy, in violation of § 53a-48, the state must establish beyond a reasonable doubt

that an agreement existed between two or more persons to engage in conduct constituting a crime and that subsequent to the agreement one of the conspirators performed an overt act in furtherance of the conspiracy. *State* v. *Rouleau*, 204 Conn. 240, 258, 528 A.2d 343 (1987); *State* v. *Estrada*, 28 Conn. App. 416, 420, 612 A.2d 110, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992). The state is also obligated to prove that the accused intended the conduct constituting a crime be performed. *State* v. *Rouleau*, supra [258]; *State* v. *Channer*, 28 Conn. App. 161, 168, 612 A.2d 95, cert. denied, 223 Conn. 921, 614 A.2d 826 (1992)." *State* v. *Hooks*, 30 Conn. App. 232, 241–42, 619 A.2d 1151, cert. denied, 225 Conn. 915, 623 A.2d 1025 (1993).

It is the defendant's claim that the state did not prove the existence of an agreement, thereby failing to prove a necessary element of the crime of conspiracy to commit murder. The existence of a formal agreement between the parties need not be proved. It is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. *State* v. *Lewis*, 220 Conn. 602, 607, 600 A.2d 1330 (1991). Because of the secret nature of a conspiracy, a conviction is usually based on circumstantial evidence. *State* v. *Goodrum*, 39 Conn. App. 526, 537, 665 A.2d 159, cert. denied, 235 Conn. 929, 667 A.2d 554 (1995). The state need not prove that the defendant and a coconspirator shook hands, whispered in each other's ear, signed papers, or used any magic words such as " 'we have an agreement.' " *State* v. *Fellato*, 10 Conn. App. 447, 453, 523 A.2d 1345 (1987). A conspiracy can be inferred from the conduct of the accused. *State* v. *Lynch*, 21 Conn. App. 386, 400, 574 A.2d 230, cert. denied, 216 Conn. 806, 580 A.2d 63 (1990). If a jury can infer from a defendant's actions that activities were planned in advance in order to facilitate the crime, that knowing participation in the act itself, may be sufficient to allow the jury to infer the conspiracy from that con-

duct. See *State* v. *Hanks*, 39 Conn. 333, 343, 665 A.2d 102, cert. denied, 235 Conn. 926, 666 A.2d 1187 (1995); see also *State* v. *Elijah*, 42 Conn. App. 687, 696–97, 684 A.2d 709 (1996).

"To prove the offense of conspiracy to commit murder, the state must prove two distinct elements of intent: that the conspirators intended to agree; and that they intended to cause the death of another person." *State* v. *Pinnock*, 220 Conn. 765, 771, 601 A.2d 521 (1992).

Our review of the record discloses that there was sufficient evidence to allow the jury to conclude that the state proved beyond a reasonable doubt that the defendant and Bagley conspired to kill the victims. Their actions in setting up and executing their ambush, their continuing to follow and shoot at the victims with one of them shouting, "Get em, get em," their actions in conjunction with one another in using the weapons, and in general, the interaction between the defendant and Bagley were sufficient to allow the jury to conclude that the actions were planned and agreed upon at some prior time. It was not unreasonable for the jury to conclude that those actions were not spontaneous and unplanned. Moreover, it was not unreasonable for the jury to conclude that it was not a coincidence that the defendant and Bagley waited in the dark, at different locations, to shoot at their victims, with the intent to kill the victims.

### C

The defendant maintains that his conviction for the crime of carrying a pistol without a permit may not be sustained because the state failed to prove that he was carrying, without a permit, a "firearm having a barrel less than twelve inches in length."[3] General Statutes

---

[3] General Statutes § 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his person, except when such person is within his dwelling house or place of business, without a permit to carry the same issued as provided in section 29-28. . . ."

§ 29-37. The defendant argues that the jurors had neither direct evidence, nor any other evidence, from which they could infer anything about the length of the barrel without resorting to speculation and conjecture.

We conclude from our review of the record that the state presented sufficient facts from which the jury could reasonably have inferred that the defendant had a pistol with a barrel length of less than twelve inches, which he carried without a permit. The evidence showed that Bagley had a long rifle and that three .45 caliber shell casings were found where he had been standing. From an expert, the jury learned that a rifle can discharge a .45 caliber shell. The state also produced evidence that the defendant had a weapon, that he was observed in the hallway from which the first bullet to strike O'Brien was fired, that prior to the shooting he had been observed leaning against a wall with his hands behind his back, hiding what he was holding, that immediately after the shootings three .10 millimeter casings were discovered in or near the doorway where the defendant had been standing, that a single .10 millimeter bullet had caused the death of Demond Braswell and that .10 millimeter bullets are fired only from pistols with barrels less than twelve inches in length.[4]

The jury is free to accept or reject, in whole or in part, the evidence presented by any witness. *State* v. *Medina*, 228 Conn. 281, 310, 636 A.2d 351 (1994). The credibility of the state's expert witness and lay witnesses, and the weight given their testimony is a matter left to the sound judgment and common sense of the jury. See *State* v. *Breton*, 235 Conn. 206, 234, 663 A.2d 1026 (1995). The jury obviously believed the state's wit-

General Statutes § 29-27 provides: "The term 'pistol' and the term 'revolver', as used in sections 29-28 to 29-30, inclusive, mean any firearm having a barrel less than twelve inches in length."

[4] The state's expert also testified that there is no rifle capable of discharging a .10 millimeter bullet.

nesses, including the expert, and gave weight to that evidence, even if circumstantial, concluding that the state had proven beyond a reasonable doubt that the defendant was guilty of the charge of carrying a pistol without a permit.

## II

The defendant next claims that his conviction for the crime of conspiracy to commit murder cannot stand, because the sole alleged coconspirator lacked the specific intent necessary for murder.[5] He alleges that his conviction on this charge is therefore a legal impossibility. Ordinarily, we will not review a claim that was not distinctly raised before the trial court. Practice Book § 4185; *State* v. *Reddick*, 33 Conn. App. 311, 331, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994). The defendant agrees that this issue was not raised before the trial court, but seeks review under the *Evans/Golding* doctrine[6] or, in the alternative, seeks plain error review pursuant to Practice Book § 4185. The defendant's request for review of this unpreserved claim is raised initially in his reply brief. We, therefore, will not review this claim under the *Evans/Golding* standard of review. *State* v. *Jones*, 34 Conn. App. 807, 815, 644 A.2d 355, cert. denied, 231 Conn. 909, 648 A.2d 158 (1994).

The plain error doctrine is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceeding. *State* v. *Krzywicki*, 39 Conn. App. 832, 840, 668 A.2d 387 (1995).

---

[5] Bagley's convictions, after a separate, earlier trial, for manslaughter in the first degree; General Statutes § 53a-55 (a) (3); as to Demond Braswell, and assault in the first and second degrees as to Tremayne O'Brien were affirmed. *State* v. *Bagley*, 35 Conn. App. 138, 644 A.2d 386, cert. denied, 231 Conn. 913, 648 A.2d 157 (1994).

[6] *State* v. *Evans*, 165 Conn. 61, 327 A.2d 576 (1973); *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

Because we can discern no court action resulting in any manifest injustice, and because this claim does not warrant review, we decline review on this basis.

## III

Last, the defendant claims that the trial court improperly admitted into evidence the probable cause hearing testimony of O'Brien. The defendant raises three grounds in support of this claim. First, he claims that his right to due process of law and a fair trial was violated by the state's suppression of exculpatory material at the probable cause hearing. Next, the defendant alleges that his right of confrontation was violated by the use of unreliable probable cause hearing testimony at trial, and finally, he argues that the trial court unduly restricted cross-examination of O'Brien at the probable cause hearing.

Following a hearing conducted in the absence of the jury, the trial court found that O'Brien was unavailable as a witness, despite good faith efforts by the state to locate him and have him present to testify in person. Moreover, the trial court found that his earlier recorded testimony at the probable cause hearing contained sufficient indicia of reliability. The trial court, therefore, allowed O'Brien's testimony to be read to the jury through a surrogate witness.

The defendant alleges that the state suppressed evidence in violation of *Brady*[7] at the probable cause hearing. The specific evidence that the defendant argues was improperly suppressed consists of O'Brien's testimony at the probable cause hearing and trial of Bagley, O'Brien's statement to the police on the day of the shooting, and the statement that Durosola Crump, the defendant's brother, gave to the police on the day of the shooting.

---

[7] *Brady* v. *Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

The defendant argues that because this evidence was suppressed by the state, he was deprived, in effect, of the opportunity to cross-examine O'Brien. He maintains that this may be distinguished from the opportunity to cross-examine effectively. We disagree.

In order for an appellate court to consider claims of nondisclosure of exculpatory material at a probable cause hearing required by our state constitution, the defendant must demonstrate that the prosecutor suppressed material evidence that was favorable to the defense. *State* v. *White*, 229 Conn. 125, 134–35, 640 A.2d 572 (1994); *State* v. *McPhail*, 213 Conn. 161, 166–67, 567 A.2d 812 (1989); *State* v. *Shannon*, 212 Conn. 387, 406, 563 A.2d 646, cert. denied, 493 U.S. 980, 110 S. Ct. 510, 107 L. Ed. 2d 512 (1989). Evidence is not considered suppressed if it is known to the defendant or his counsel. *State* v. *Rasmussen*, 225 Conn. 55, 91, 621 A.2d 728 (1993). The defendant has failed to demonstrate that he never received O'Brien's statement to the police,[8] that he did not know of O'Brien's testimony or have the opportunity to purchase the transcripts of the Bagley probable cause hearing and trial, or that the Durosola Crump statement was both favorable and material. See *State* v. *Simms*, 201 Conn. 395, 518 A.2d 35 (1986); *State* v. *Sherman*, 38 Conn. App. 371, 662 A.2d 767, cert. denied, 235 Conn. 905, 665 A.2d 905 (1995). From the record before us we cannot conclude that a *Brady* violation took place at the probable cause hearing.

We have recently concluded that if a trial court has properly determined that a witness is unavailable,[9] and if the defendant has been given the opportunity to cross-examine the witness, that witness' prior testimony at a probable cause hearing, if found to bear adequate

---

[8] The record appears to indicate that it was given, as required, following O'Brien's direct examination at the hearing in probable cause.

[9] The defendant does not contest this determination by the trial court.

indicia of reliability, is admissible evidence under the prior testimony exception to the hearsay rule. See *State* v. *Malone* 40 Conn. App. 470, 671 A.2d 1321 (1996).

"Cases involving the admission of an unavailable declarant's prior statements . . . [give] rise to Confrontation Clause issues because hearsay evidence was admitted as substantive evidence against the [defendant]. . . . *State* v. *Outlaw*, 216 Conn. 492, 503, 582 A.2d 751 (1990). The sixth amendment to the United States constitution guarantees that [i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . . While the confrontation clause may bar the admissibility of evidence possibly admissible under an exception to the hearsay rule; *State* v. *Outlaw*, supra, 504; the right of confrontation is not violated by the substantive use of a prior statement if the declarant is unavailable, and if that statement bears adequate indicia of reliability. Id., 505. . . . [There is] no authority, under either [the federal or state] constitution, for the proposition that any particular type of cross-examination, as to duration or content, is a requirement that must be satisfied before that prior testimony may be admissible. Neither the state nor the federal guarantees of the right of confrontation require that a witness be present at trial for an actual cross-examination in order to admit prior testimony given under oath. . . . The test is the opportunity for a full and complete cross-examination rather than the use made of that opportunity. *State* v. *Parker*, [161 Conn. 500, 504, 289 A.2d 894 (1971)]. . . . Our Supreme Court recognized, although not as a matter of constitutional interpretation, that the testimony given at a probable cause hearing has the identical safeguards to insure reliability and trustworthiness as the testimony given at the trial. *State* v. *Parker*, supra, [503]." (Citations omitted; internal quotation marks omitted.) *State* v. *Malone*, supra, 40 Conn. App. 476–77.

The extent of cross-examination at a probable cause hearing, or at a trial, is a trial tactic. *State* v. *Parker*, supra, 161 Conn. 504. The defendant's limited cross-examination of O'Brien at the preliminary hearing was entirely his choice. Our review of the record discloses that the defendant, through counsel, exercised his right of cross-examination and elicited many answers from the witness, perhaps as many as sixty, dealing with relevant matters. Our review of the record does not disclose that the trial court limited the defendant's cross-examination so as to have violated his rights of confrontation.[10]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Although the trial court improperly refused to mark O'Brien's written statement as an exhibit for identification at the preliminary hearing, it was marked as a full exhibit at the trial. The failure to mark that statement for identification did not, however, deprive the defendant of the opportunity for effective cross-examination of O'Brien at that hearing.