# STATE OF CONNECTICUT *v.* DONALD G. BEAULIEU
## (AC 30104)

Bishop, Lavine and Schaller, Js.

Argued September 8—officially released November 10, 2009

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Catherine Brannelly Austin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Donald G. Beaulieu, appeals from the judgment of conviction, rendered after a jury trial, of two counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, the defendant claims that (1) the trial court abused its discretion in allowing the testimony of two late disclosed witnesses and (2) his conviction under both § 53-21 (a) (1) and (2) violated his protection against double jeopardy. We affirm the judgment of the trial court.

The jury reasonably could have found the following relevant facts. The first encounter between the victim[1] and the defendant occurred some time after February, 2007, when the minor victim[2] began skipping school to spend time at Hamilton Park in Waterbury. The victim would sit on a rock and wait for men to approach him and to ask him to engage in sexual acts in exchange for money. One day while the victim was sitting on the rock, the defendant drove into the park and waved the victim over to his car. The victim approached the defendant's car, and the defendant asked if the victim wanted to go into the nearby wooded area with him. The two walked into the wooded area, and the defendant then positioned the victim against a tree and pulled down both his and the victim's pants. The defendant noticed someone looking at them and moved himself

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[2] The victim was born on July 4, 1991, and was fifteen years old between February and May, 2007, when the events at issue took place.

and the victim to the other side of the tree for privacy.[3] The defendant then performed fellatio on the victim. After about ten minutes, the defendant pulled up his pants and led the victim out of the wooded area. The defendant asked the victim to wait at the edge of the wooded area, got in his car and left the park. The victim then left the wooded area. Ronald A. Bridschge observed the defendant and the victim leaving the wooded area.

At a later date, also between February and May, 2007, the victim and the defendant had a second encounter. The victim again skipped school to go to Hamilton Park. As the victim was approaching Hamilton Park by foot, the defendant drove up to him and asked him to get into the backseat of his car, then drove to Hamilton Park. Once at the park, the defendant stopped his car, got out and opened the door to the backseat. The defendant then pulled down both his and the victim's pants and began performing fellatio on the victim. Another car interrupted the defendant, who, after motioning for the car to pass, parked the car and again led the victim into the wooded area. Once in the wooded area, the defendant performed fellatio on the victim. After ten minutes, the defendant led the victim out of the wooded area and gave him a ride back to the entrance to the park.

Some time in May, 2007, the victim's father found the victim with two older men outside the Waterbury public library and took him to the police department. The victim returned to the Waterbury police department a few days later and told investigators all the relevant details pertaining to his two sexual encounters with the defendant. The defendant subsequently was charged with two counts of sexual assault in the second degree

[3] Investigators later discovered that Walter Rodgers was the individual who saw the defendant and the victim in the wooded area.

in violation of § 53a-71 (a) (1), one count of risk of injury to a child in violation of § 53-21 (a) (1) and two counts of risk of injury to a child in violation of § 53-21 (a) (2). Following a jury trial, the defendant was found guilty on all counts and sentenced to a total effective term of eighteen years, suspended after ten years, with fifteen years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion in allowing Bridschge and Walter Rodgers to testify. Specifically, the defendant maintains that the witnesses should not have been allowed to testify, first, because the state failed to question the victim about the existence of witnesses in its initial interviews with the victim in May, 2007, and second, because the state breached its duty to disclose the victim's February 14, 2008, statement that revealed the existence of witnesses. Additionally, the defendant argues that the court abused its discretion in allowing the witnesses to testify over defense objection. The first two claims were not preserved at trial and are not reviewable on appeal. See *State* v. *Ankerman*, 81 Conn. App. 503, 508, 840 A.2d 1182, cert. denied, 270 Conn. 901, 853 A.2d 520, cert. denied, 543 U.S. 944, 125 S. Ct. 372, 160 L. Ed. 2d 256 (2004). We disagree with the defendant's third claim.

The following facts are relevant to the defendant's claims. On February 14, 2008, the victim gave an oral statement to investigators that the person who had seen the defendant and the victim engage in a sexual act in the wooded area had a "goldish brown" car and that the person who had seen him emerge from the wooded area drove a green or gold colored van. The victim also gave physical descriptions of the two witnesses. Acting on this information, investigators began looking for the two individuals. On March 7, 2008, the man whom the

victim had seen when he emerged from the wooded area was identified by investigators as Bridschge. On March 10, 2008, investigators first talked to Bridschge, and, the following day, Bridschge told investigators that the other eyewitness was Rodgers.

The state provided the defendant with a list of potential witnesses on February 25, 2008. The state made several revisions to the initial list and, on March 10, 2008, Bridschge's name first appeared as a potential witness. The following day, on March 11, 2008, the state sent another revised list that included the names of both Bridschge and Rodgers. The trial began one week later on March 17, 2008.

A

With regard to the defendant's first two claims, he asserts for the first time on appeal that the state failed to question the victim about the existence of witnesses during its initial interviews with the victim in May, 2007, and that the state breached its duty to disclose the victim's February 14, 2008, statement that revealed the existence of witnesses. Although the defendant objected to the court's permitting Bridschge and Rodgers to testify, he did not do so on the grounds that the state improperly questioned the victim or breached its duty to disclose the victim's statement about the witnesses. The defendant therefore seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[4]

---

[4] *Golding* holds that "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

The defendant did not, however, engage in a *Golding* analysis in his appellate brief. "[D]efendants who seek consideration of unpreserved constitutional claims [on appeal] . . . bear the burden of establishing their entitlement to such review under the guidelines enumerated in *Golding* . . . ." *State* v. *Waz*, 240 Conn. 365, 371 n.11, 692 A.2d 1217 (1997). In his brief, the defendant makes only passing references to *Golding* and has provided us with no analysis of its four prongs. In the absence of adequate briefing of the issues, we will not address these two arguments raised by the defendant that were not properly preserved in the trial court.[5] See *State* v. *Ankerman*, supra, 81 Conn. App. 508.

B

The defendant's third claim, which is that the court abused its discretion in allowing the witnesses to testify over his objection, was preserved by his motion to preclude certain evidence and motion in limine. On March 17, 2008, the defendant filed a motion to preclude the state from calling Bridschge or Rodgers, asserting that it was "unbelievable" that the state could locate an eyewitness days prior to the presentation of evidence at trial. The court denied the defendant's motion but offered the defendant additional time to interview the newly discovered witnesses. The defendant also filed a motion in limine to bar the testimony of Bridschge

---

[5] The defendant's claim is similarly not reviewable under the standard this court announced in *State* v. *Wright*, 114 Conn. App. 448, 969 A.2d 827 (2009). There, this court maintained that a defendant need not cite *Golding*, but only "present a record that is adequate for review and affirmatively [demonstrate] that his claim is indeed a violation of a fundamental constitutional right." (Internal quotation marks omitted.) Id., 463.

Here, because the defendant at trial did not raise his concern regarding the state's investigation, the state was not on notice that it had to establish a record sufficient to defend the competency of the investigation and thus did not do so. The record, therefore, is not adequate for review. See *State* v. *Brunetti*, 279 Conn. 39, 57–60, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

on the ground that it was unreliable, and a motion to suppress the identification of the defendant by both Bridschge and Rodgers. The court denied both of the defendant's motions. The court again, however, offered the defendant additional time for the purposes of further investigation in light of the testimony. Defense counsel declined, stating, "I appreciate the offer, Your Honor, but just as a matter of strategy, I'd rather keep going on with the trial."

To prevail on his claim, the defendant must demonstrate that the court abused its discretion in refusing to impose the requested sanctions. *State* v. *Troupe*, 237 Conn. 284, 311–12, 677 A.2d 917 (1996). "In general, abuse of discretion exists when a court could have chosen different alternatives but has decided the matter so arbitrarily as to vitiate logic, or has decided it based on improper or irrelevant factors. . . . Therefore, [i]n those cases in which an abuse of discretion is manifest or where injustice appears to have been done, reversal is required." (Citation omitted; internal quotation marks omitted.) *State* v. *Peeler*, 271 Conn. 338, 416, 857 A.2d 808 (2004), cert. denied, 546 U.S. 845, 126 S. Ct. 94, 163 L. Ed. 2d 110 (2005).

"Practice Book § 40-5[6] gives broad discretion to the trial judge to grant an appropriate remedy for failure to comply with discovery requirements. Generally, [t]he primary purpose of a sanction for violation of a discovery order is to ensure that the defendant's rights are protected, not to exact punishment on the state for its allegedly improper conduct. As we have indicated, the formulation of an appropriate sanction is a matter

---

[6] Practice Book § 40-5 provides in relevant part: "If a party fails to comply with disclosure as required under these rules, the opposing party may move the judicial authority for an appropriate order. The judicial authority hearing such a motion may enter such orders and time limitations as it deems appropriate, including, without limitation, one or more of the following . . . (2) Granting the moving party additional time or a continuance . . . ."

within the sound discretion of the trial court." (Internal quotation marks omitted.) *State* v. *Wilson F.*, 77 Conn. App. 405, 417, 823 A.2d 406, cert. denied, 265 Conn. 905, 831 A.2d 254 (2003).

"Suppression of relevant, material and otherwise admissible evidence is a severe sanction which should not be invoked lightly." *State* v. *Festo*, 181 Conn. 254, 265, 435 A.2d 38 (1980). Here, although the court, in denying the defendant's motion to preclude, accepted the state's explanation that the witnesses were discovered during an ongoing investigation, it nonetheless offered the defendant time for further investigation.[7] The court made a similar offer after denying the defendant's motion in limine. The remedy offered, although not that which the defendant requested, is one enumerated in Practice Book § 40-5 as appropriate for a failure to comply with disclosure.

Furthermore, the defendant cannot claim error on appeal because his trial strategy failed. The defendant elected not to accept the court's offer of additional time to investigate the two witnesses. The defendant, therefore, has not demonstrated that he was prejudiced by the court's ruling. "Our appellate courts frequently have stated that a party may not pursue one course of action at trial for tactical reasons and later on appeal argue that the path he rejected should now be open to him." (Internal quotation marks omitted.) *State* v. *Davis*, 76 Conn. App. 653, 662, 820 A.2d 1122 (2003). The court did not abuse its discretion in awarding this remedy and allowing the witnesses to testify over the defendant's objections.

---

[7] In denying the defendant's motion to preclude, the court stated: "I'm not happy with this late disclosure, but I do understand the scenario, and I accept [the prosecution's] representation of the facts as presented. I will deny the motion to preclude. . . . So, [defense counsel] . . . I will give you as much time as you like. . . . If you want me to . . . take off Monday morning while you go talk to him . . . I think you're entitled to that."

## II

The defendant's final claim is that his conviction under both § 53-21 (a) (1) and (2) for a single course of conduct, stemming from his first encounter with the victim, violated his protection against double jeopardy. The defendant initially was charged with two counts of sexual assault in the second degree in violation of § 53a-71 (a) (1) and two counts of risk of injury to a child in violation of § 53-21 (a) (2).[8] When the state filed its long form information, it added a count of risk of injury to a child in violation of § 53-21 (a) (1).[9] The defendant was found guilty on all counts. The defendant now argues that he was punished twice, under both § 53-21 (a) (1) and (2), for a single course of conduct that arose out of his initial interaction with the victim. We disagree.

The defendant did not preserve his claim at trial and now seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. Such review is warranted. "A defendant may obtain review of a double jeopardy claim, even if it is unpreserved, if he has received two punishments for two crimes, which he claims were one crime, arising from the same transaction and prosecuted at one trial . . . . Because the claim presents an issue of law, our review is plenary " (Citation omitted.) *State* v. *Crudup*, 81 Conn. App. 248, 252, 838 A.2d 1053, cert. denied, 268 Conn. 913, 845 A.2d 415 (2004).

---

[8] General Statutes § 53-21 (a) provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years . . . in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of . . . a class B felony . . . ."

[9] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that . . . the health of such child is likely to be injured or the morals of such child are likely to be impaired . . . shall be guilty of a class C felony . . . ."

"In determining whether a defendant has been placed in double jeopardy under the multiple punishments prong, we apply a two step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Alvaro F.*, 291 Conn. 1, 6, 966 A.2d 712, cert. denied, 558 U.S. 882 130 S. Ct. 200, 175 L. Ed. 2d 140 (2009). "On appeal, the defendant bears the burden of proving that the prosecutions are for the same offense in law and fact." (Internal quotation marks omitted.) *State* v. *Ferguson*, 260 Conn. 339, 361, 796 A.2d 1118 (2002).

With regard to the first step of the double jeopardy analysis, the defendant contends that his waving the victim over from the rock on which he was sitting to his car, asking the victim to go into the wooded area, walking with the victim into the wooded area, performing fellatio on the victim and finally exiting the wooded area with the victim constitutes one act or transaction for the purposes of the double jeopardy analysis. "For the first prong of the analysis of the defendant's claim, it is necessary to review the information and the bill of particulars." (Internal quotation marks omitted.) *State* v. *Vazquez*, 66 Conn. App. 118, 124, 783 A.2d 1183, cert. denied, 258 Conn. 941, 786 A.2d 428 (2001). The long form information, however, does not specify the precise dates or times when the conduct occurred, nor does it detail which events underlie each risk of injury charge.[10]

When, as here, the bill of particulars and information fail to provide the specific dates and times of the

[10] At oral argument, the state clarified that the risk of injury charge brought under § 53-21 (a) (1) pertained to the first incident between the victim and the defendant.

charged acts, we must look to the evidence presented at trial to determine whether each count arose from a separate act. See *State* v. *Miranda*, 260 Conn. 93, 122–24, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002); see also *State* v. *Howard F.*, 86 Conn. App. 702, 710–11, 862 A.2d 331 (2004), cert. denied, 273 Conn. 924, 871 A.2d 1032 (2005). The jury reasonably could have found that during the first encounter, the defendant drove to the park and, while in his car, waved the victim over to him, asked the victim if he wanted to go into the wooded area, walked into the wooded area with the victim *and then* performed the sexual act on the victim.

Though it relates to kidnapping, not risk of injury to a minor, both parties rely on our Supreme Court's decision in *State* v. *Salamon*, 287 Conn. 509, 949 A.2d 1092 (2008).[11] In support of his argument, the defendant maintains that the events leading to the sexual act were minimal, incidental to and necessary for the sexual act to occur and not a separate act or transaction. The state contends that the act of enticing a victim into the wooded area to engage in a sexual act is not incidental to and necessary for the commission of unlawful sexual contact with a minor. *Salamon* holds that "the test . . . to determine whether [the] confinements or movements involved [were] such that kidnapping may also be charged and prosecuted when an offense separate from kidnapping has occurred asks whether the confinement, movement, or detention was merely incidental to the accompanying felony or *whether it was significant*

---

[11] In *Salamon*, our Supreme Court reversed its long-standing jurisprudence that held that the crime of kidnapping encompasses restraints that are necessary or incidental to the commission of a separate underlying crime. The court held that the crime of kidnapping requires an intent "to prevent the victim's liberation for a longer period of time or to a greater degree than that which is necessary to commit [an underlying] crime." *State* v. *Salamon*, supra, 287 Conn. 542.

*enough, in and of itself, to warrant independent prosecution."* (Emphasis added; internal quotation marks omitted.) Id., 547. Although *Salamon* concerns kidnapping, we do not dispute the parties' shared assumption that the analysis utilized in *Salamon* provides some assistance in evaluating whether the conduct at issue in this case constitutes separate acts for double jeopardy purposes.

This court has held previously that a defendant could be found guilty under § 53-21 (a) (1) for attempting to lure a minor into a situation for the purpose of engaging in sexual acts with him, even if the defendant was not successful in doing so. *State* v. *Eastwood*, 83 Conn. App. 452, 850 A.2d 234 (2004), cert. denied, 286 Conn. 914, 914 A.2d 945 (2008). "The fact that the defendant did not *actually* impair the boys' morals is of no consequence. . . . What the statute precludes is the creation of a *situation* that is *likely* to impair the morals of a victim younger than sixteen years of age." Id., 476. The fact that here the defendant was successful in enticing the victim into the wooded area so that he could then make "contact with the intimate parts . . . of a child" in violation of § 53-21 (a) (2) does not belie the fact that his luring the victim over to his car was sufficient for independent prosecution under § 53-21 (a) (1) for placing a child younger than sixteen "in such a situation that . . . the health of such child is likely to be injured or the morals of such child are likely to be impaired . . . ." See *State* v. *Snook*, 210 Conn. 244, 261–62, 555 A.2d 390 (analogizing violations of § 53-21 to forcible sexual intercourse, where it has been held that "each separate act . . . constitutes a separate crime" [internal quotation marks omitted]), cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989).

As *Salamon* and its progeny make clear in the context of our kidnapping statutes, for an act not to warrant independent prosecution it must be "merely incidental

to and necessary for" the underlying crime. *State* v. *Salamon*, supra, 287 Conn. 542. The defendant's enticing the victim into a situation for the purpose of engaging in a sexual act was not "merely incidental and necessary to" his performing fellatio on the victim; it was sufficient for independent prosecution under § 53-21 (a) (1). A different view would allow a person, who has placed a child younger than sixteen in a situation in which his morals are likely to be impaired, to touch that child's intimate parts without fear of prosecution for having created the opportunity.

The defendant's actions in luring the victim into the wooded area can be considered a separate act or transaction from the commission of the sexual act itself. As this case is decided on the first prong of the double jeopardy inquiry, there is no need to address the second prong.[12] The defendant's double jeopardy claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[12] The second prong of the double jeopardy analysis requires application of the familiar test set forth in *Blockburger* v. *United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), and adopted by our Supreme Court in *State* v. *Alvarez*, 257 Conn. 782, 794–95, 778 A.2d 938 (2001). See *State* v. *Re*, 111 Conn. App. 466, 469, 959 A.2d 1044 (2008), cert. denied, 290 Conn. 908, 964 A.2d 543 (2009). We need not perform a *Blockburger* analysis, however, as this case is decided on the first prong.