# STATE OF CONNECTICUT *v.* PRISCILLA C. DICKMAN
## (AC 29995)

Lavine, Alvord and West, Js.

Argued November 10, 2009—officially released March 2, 2010

*Norman A. Pattis,* with whom, on the brief, were *Stephen H. Solomson* and *Jessica M. Santos,* for the appellant (defendant).

*Rocco A. Chiarenza,* special deputy assistant state's attorney, with whom, on the brief, were *Kevin T. Kane,* chief state's attorney, and *Michael J. Sullivan,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. This appeal concerns the alteration of Probate Court documents that were submitted to an insurance carrier with respect to a claim filed on behalf of a person for whom a conservator had been appointed. The defendant, Priscilla C. Dickman, appeals from the judgment of conviction, rendered after a jury trial, of

forgery in the third degree in violation of General Statutes § 53a-140. On appeal, the defendant claims that the court erred by (1) denying her motion for a judgment of acquittal because there was insufficient evidence pursuant to which the jury could have found her guilty, (2) failing to provide a definition for the terms used in § 53a-140 and (3) imposing her sentence in an illegal manner. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In 1999, the Probate Court for the district of Manchester appointed the defendant's husband, William B. Dickman, conservator of the estate and person of his brother, Donald Dickman. William Dickman sought the appointment to enable him to apply for social security disability benefits for Donald Dickman. Donald Dickman had opposed the appointment of a conservator, and, approximately one year after the appointment had been made, left Connecticut to reside in California.

On or about November 6, 2003, Donald Dickman, as a pedestrian, was injured when a motor vehicle struck him. He was treated at a hospital in California and incurred medical expenses. On June 25, 2004, either Donald Dickman or William Dickman filed a claim with Allstate Insurance Company (Allstate), the insurer of the motorist who struck Donald Dickman. The defendant contacted Allstate with respect to the claim on June 28, 2004. Pursuant to its policy, Allstate required the defendant to provide authorization to speak with her on behalf of Donald Dickman. Allstate accepts Probate Court documents as proof of such authorization.

On July 8, 2004, the defendant spoke with an Allstate representative and became frustrated when she was not able to obtain information about Donald Dickman's claim. She threatened to get an attorney to intervene on her behalf. Later that day, the defendant sent Allstate a facsimile of a probate form, which she later admitted

she had altered by adding her name in addition to that of William Dickman in the box entitled "fiduciary" and also altered the box indicating position of trust from conservator to conservators.[1] An Allstate representative responded to the defendant that the altered Probate Court document was insufficient to authorize the representative to speak to her about Donald Dickman's claim and told her that she would have to secure a letter of designation. On July 27, 2004, the defendant sent such a letter to Allstate via facsimile. The letter, purporting to have been signed by Donald Dickman, authorized the defendant and William Dickman to handle Donald Dickman's claim with Allstate. According to the defendant, she had been able to contact Donald Dickman in California because she knew he was staying with a person known only as Michelle and informed him of her immediate need of the designation letter. Although the designation letter was dated July 25, 2004, the defendant claimed that she had received it prior to that date. Given the Probate Court document and the designation letter, an Allstate representative spoke with the defendant about Donald Dickman's claim.

On August 4, 2004, the defendant informed an Allstate representative that she had obtained Donald Dickman's medical bills, which totaled $4500, excluding the cost of an ambulance. The defendant also informed Allstate that Donald Dickman continued to experience pain as a result of the accident and that he had to fly back to Connecticut to obtain treatment.[2] The defendant wanted Allstate to consider all of this information in settling Donald Dickman's claim.

Allstate received a copy of Donald Dickman's medical bill from South Coast Medical Center in Laguna Beach,

---

[1] The defendant altered a copy of form PC-441 Rev. 6/01, Fiduciary's Periodic or Final Account, on which William Dickman had submitted an accounting for the year May, 2002, to May, 2003.

[2] William Dickman testified, however, that his brother, Donald Dickman, did not fly in airplanes.

California, on August 11, 2004. The numeral 1 had been added in front of two of the medical charges thereon, which had the effect of increasing the amount of the bill by $2000. The claims adjuster became suspicious of the alteration and referred the case to Allstate's special investigations unit. As a matter of course, any time Allstate believes that it has been presented with a fraudulent claim, it enters a report with the National Insurance Crime Bureau. During the course of another insurance investigation, inspectors from the office of the chief state's attorney discovered Allstate's report regarding Donald Dickman's claim and commenced an investigation. The defendant subsequently was arrested.

Inspector Keith I. McCurdy of the office of the chief state's attorney testified at trial. According to McCurdy, after the defendant was arrested and had waived her rights pursuant to *Miranda*,[3] she said that she was innocent of all charges, she was the conservator for Donald Dickman and that she was not worried about the matter because her attorney had handled it for her and had sent the documents to Allstate via facsimile.[4] During closing argument, defense counsel conceded that the defendant had altered the Probate Court document but argued that the defendant did not intend to defraud Allstate.[5]

The jury found the defendant guilty of one count of forgery in the third degree, and not guilty of a second

---

[3] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[4] The documents sent to Allstate via facsimile bore the defendant's home facsimile number.

[5] Defense counsel stated to the jury, in part: "So, [the defendant] had this old probate certificate, and she added her name because Donald [Dickman] had always authorized her to act on his behalf, as had William [Dickman]. But certainly there was no intent to defraud Allstate, and the judge will instruct you shortly that a key element in this offense of forgery is an intent to defraud the other party or person, in this case Allstate."

count of forgery in the third degree and attempt to commit larceny in the third degree. Following her sentencing, the defendant filed this appeal.

I

The defendant first claims that the court improperly denied her motion for a judgment of acquittal.[6] We do not agree.

The defendant was tried on a three count amended long form information. The state alleged, in count one, that on July 8, 2004, the defendant sent Allstate an altered Probate Court document in violation of § 53a-140; in count two, that on August 11, 2004, the defendant sent Allstate an altered bill for medical services provided to Donald Dickman in violation of § 53a-140; and in count three, that on August 11, 2004, the defendant sent Allstate an altered bill for medical services provided to Donald Dickman in violation of General Statutes §§ 53a-49 (a) (2) and 53a-124 (a) (2), attempt to commit larceny in the third degree. At the conclusion of the state's case-in-chief, the defendant asked the court to render a judgment of acquittal as to all counts. The defendant claimed as to the first count that there was no evidence of intent to defraud, injure or deceive Allstate and that as to the second and third counts there was evidence that Donald Dickman sent the medical bill to Allstate. The court denied the motion for a judgment of acquittal, and the defendant thereafter presented her case.[7]

---

[6] Within her first claim, the defendant makes reference to her second claim, which is that the court improperly charged the jury. See part II of this opinion. The defendant asserts that the jury was confused as to the meaning of injure. Because we conclude that there was sufficient evidence by which the jury reasonably could have found that the defendant intended to deceive Allstate, we do not address this aspect of the defendant's argument in her first claim.

[7] "Because the waiver rule has been deemed constitutional; *State* v. *Perkins*, 271 Conn. 218, 228–45, 856 A.2d 917 (2004); we review [a] defendant's insufficiency of the evidence claim by examining all of the evidence before the jury. It is the propriety of the jury's verdict of guilty, not the propriety

## A

On appeal, we are concerned only with the defendant's conviction of forgery in the third degree as alleged in count one the long form information. General Statutes § 53a-140 (a) provides: "A person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument, or issues or possesses any written instrument which he knows to be forged." To be found guilty of forgery in the third degree, the accused must have intended to do one of three things: defraud, deceive or injure.

During oral argument, the defendant conceded that she altered the Probate Court document she sent to Allstate but argued that she did not intend to defraud Allstate. For purposes of this opinion, we assume that the defendant did not intend to defraud Allstate. The question, then, is whether there was sufficient evidence by which the jury reasonably could have found that the defendant intended to deceive or injure Allstate. As there is no evidence that Allstate was injured by the defendant's actions, we are left to decide whether there was sufficient evidence by which the jury reasonably could have found beyond a reasonable doubt that the defendant intended to deceive Allstate.[8]

"The standard of review we apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict.

of the court's denial of a motion for a judgment of acquittal after the state's case-in-chief has been concluded, that we review." (Internal quotation marks omitted.) *State* v. *Bereis*, 114 Conn. App. 554, 558 n.4, 970 A.2d 768, cert. denied, 293 Conn. 902, 975 A.2d 1278 (2009).

[8] Allstate determined that Donald Dickman was responsible for the pedestrian-motor vehicle accident and made no payment to him.

Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Bivrell*, 116 Conn. App. 556, 559, 976 A.2d 60 (2009).

Moreover, "we must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Morgan*, 274 Conn. 790, 800, 877 A.2d 739 (2005).

"It is well settled . . . that the question of intent is purely a question of fact. . . . The state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually proven by circumstantial evidence. . . . Intent may be and usually is inferred from conduct. . . . [W]hether such an inference should be drawn is properly a question for the jury to decide." (Citations omitted; internal quotation marks omitted.) *State* v. *Sam*, 98 Conn. App. 13, 35–36, 907 A.2d 99, cert. denied, 280 Conn. 944, 912 A.2d 478 (2006). "Intent may be inferred from circumstantial evidence such as the events leading to and immediately following the incident, and the jury may infer that the defendant intended the natural consequences of his actions." *State* v. *McRae*, 118 Conn. App. 315, 320, 983 A.2d 286 (2009).

The evidence before the jury demonstrates that the defendant sought to speak to an Allstate representative about a claim made on behalf of Donald Dickman. The

defendant learned that, pursuant to an Allstate policy, an Allstate representative would not discuss the claim with a third party who was not authorized to speak for Donald Dickman. The defendant was frustrated by the policy and threatened the claims adjuster with having to deal with an attorney. Thereafter, the defendant sent Allstate a probate form that she had altered by adding her name as a conservator for Donald Dickman. The jury reasonably could have concluded that the defendant sent the altered probate form to Allstate to circumvent its policy of speaking only to third parties authorized to speak on behalf of claimants. The jury reasonably could have inferred that the defendant intended Allstate to believe that she was Donald Dickman's conservator, and, thus, an Allstate representative could discuss his claim with her. Because the defendant was not Donald Dickman's conservator, the jury could have concluded, on the basis of the circumstantial evidence, that the defendant intended to deceive Allstate by causing it to believe that she was Donald Dickman's conservator.

The defendant contends that Allstate did not rely on the forged Probate Court form, as it told the defendant to provide a designation letter. The defendant reasons that because Allstate did not rely on the forged Probate Court document, it was not deceived. Section 53a-140 does not address the behavior of a victim of forgery in the third degree. The statute sets forth the elements of the crime, including the intent of the accused. Whether an accused, in this case the defendant, was successful in an attempt to deceive is not the issue. The defendant further contends that her intent only was to help Donald Dickman. Again, her argument misses the mark. Even if she sought to help Donald Dickman, the jury found that she attempted to help him by deceiving Allstate as to her status as conservator.

B

The defendant also claims that her conviction of the charge alleged in count one of the amended long form information is inconsistent with the jury's finding her not guilty of the charge alleged in count two of the long form information, which also alleged forgery in the third degree.[9] We note first that the construction of pleadings is a question of law, for which we engage the plenary standard of review. *Miller* v. *Egan*, 265 Conn. 301, 308, 828 A.2d 549 (2003).

On the basis of our review of the long form information, we conclude that the jury's verdicts with regard to counts one and two are not inconsistent. The allegations in counts one and two concern the defendant's behavior on two different days as it relates to two different documents. The defendant admitted that she altered the Probate Court document before sending it to Allstate. As to the medical bill, the defendant testified that Donald Dickman, not she, altered it. On the basis of the evidence and its credibility determinations, the jury reasonably could have concluded that the defendant was not culpable of the charges in the second count. The verdicts, therefore, were not inconsistent, and the court did not improperly deny the defendant's motion for a judgment of acquittal.

II

The defendant's second claim is that the court improperly charged the jury by failing to give, sua

---

[9] After oral argument in this court, we sua sponte ordered the parties to submit supplemental briefs to address the following issues: (1) Whether the issue of logical or legal inconsistency of verdicts was raised in the defendant's brief filed on November 24, 2008; and (2) if so, what effect, if any does the Supreme Court decision in *State* v. *Arroyo*, 292 Conn. 558, 973 A.2d 1254 (2009), have on the present case. We have assumed, without deciding, that the defendant raised the issue of inconsistent verdicts in her initial brief and that the state responded to the argument in its brief. Because we conclude that the verdicts were not inconsistent, we need not address the impact of *Arroyo*.

sponte, an instruction on the "legal definition" of the words deceive, defraud and injure. The defendant cannot prevail.

The following facts are relevant to the defendant's claim. As previously stated, the defendant was charged with forgery in the third degree in violation of § 53a-140. Section 53a-140 (a) provides: "A person is guilty of forgery in the third degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument, or issues or possesses any written instrument which he knows to be forged." When giving the relevant portion of its charge, the court read the statute and then stated that for the jury "to find the defendant guilty of this charge, the state must prove the following elements beyond a reasonable doubt. . . . All right, the second element that the state must prove is that the defendant had the specific intent to deceive, defraud or injure another person. A person acts intentionally with respect to a result, when her conscious objective is to cause such result. Intent relates to the condition of mind of the person who commits the act, his or her purpose in doing it. What the defendant intended is a question of fact for you to determine."[10] Neither the state nor the defendant took an exception to the charge as given. The defendant also did not ask the court to define the words deceive, defraud or injure.

During its deliberations, the jury asked for a dictionary. The court informed the jury that it could not have a dictionary but that if the jury had a specific question, needed a reinstruction or the definition of a specific word, the court would do its best to answer the question. A member of the jury responded: "In particular, the question we're having is on the first count, the third sentence down of the charges, start with the word

---

[10] The jury had a copy of the court's instructions while it was deliberating.

injure, so if I read them from the beginning, '[I]t charges that on or about July [8], 2004, in the town of Coventry, state of Connecticut, is said [defendant] with intent to defraud, deceive and injure Allstate . . . .' We are questioning the word injure . . . if that can be clarified." The court then excused the jury and conferred with counsel. The court stated that its inclination was to instruct the jury that injure covers a wide variety of possibilities, including economic injury, physical injury or any type of injury to a party. Counsel agreed to the supplemental instruction.

When the jury returned to the courtroom, the court stated: "All right, in response to your question as to the definition of injury, injury with respect to the complainant or victim, here, of Allstate . . . would include economic injury, physical injury or any other kind of injury to the company. I just want to bring to your attention that even though the amended, long form information says with intent to defraud, deceive and injure, if you look at my instructions to you, I do not use the conjunctive in defraud, deceive and injure. Rather, you need only find that with intent to defraud, deceive or injure Allstate . . . Company, she committed several acts. So, the long form information is written in the conjunctive; I have charged you in the disjunctive, and you should follow my charge rather than the long form information." Neither counsel took an exception to the supplemental charge.[11]

On appeal, the defendant claims that the court failed to provide the jury sua sponte with the "legal definition"

[11] The court asked counsel whether there were any exceptions to its charge. Defense counsel stated, "no exceptions, Your Honor." On appeal, the state claims that the defendant waived her right to challenge on appeal the court's charge to the jury. Although we decline to resolve the defendant's claim on the basis of waiver, we take this opportunity to remind both trial and appellate counsel that the defense cannot claim error on appeal because trial strategy failed. See *State* v. *Beaulieu*, 118 Conn. App. 1, 9, 982 A.2d 245, cert. denied, 294 Conn. 921, 984 A.2d 69 (2009).

of the words defraud, deceive and injure. The defendant failed to preserve this claim at trial and seeks to prevail pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. "[T]he first two [prongs of *Golding*] involve a determination of whether the claim is reviewable; the second two . . . involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *State* v. *Wright*, 114 Conn. App. 448, 458, 969 A.2d 827 (2009).

The claim meets the first prong, as the record is adequate for our review. Whether the defendant's claim meets the second *Golding* prong requires analysis. The defendant claims that the court failed to give the "legal definition" of defraud, deceive or injure. Our research has not revealed the use of the term "legal definition" in our decisional law. Nonetheless, "the failure to instruct the jury adequately on each essential element of the crime charged may have resulted in a violation of the defendant's due process rights implicating the fairness of [the] trial." (Internal quotation marks omitted.) *State* v. *Anderson*, 212 Conn. 31, 36, 561 A.2d 897 (1989). The question is what is an *essential* element of a crime. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397

U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Under § 53a-140, the accused may be convicted only upon proof beyond a reasonable doubt of an intent to deceive, defraud or injure. "[T]he failure to instruct a jury on an essential element of a crime charged is error because it deprives the defendant of the right to have the jury told what crimes he is actually being tried for and what the essential elements of those crimes are." (Internal quotation marks omitted.) *State* v. *Anderson*, supra, 37. The defendant's claim therefore is of constitutional magnitude, and we will afford it review.

"It is well settled that jury instructions are to be reviewed in their entirety. . . . When the challenge to a jury instruction is of constitutional magnitude, the standard of review is whether it is reasonably possible that the jury [was] misled. . . . In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement . . . . Individual instructions also are not to be judged in artificial isolation . . . . Instead [t]he test to be applied . . . is whether the charge . . . as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Makee R.*, 117 Conn. App. 191, 198, 978 A.2d 549, cert. granted on other grounds, 294 Conn. 912, 983 A.2d 275 (2009).

The term "statutory definition" is used when the legislature has seen fit to define the elements of a criminal offense. See *State* v. *Brown*, 259 Conn. 799, 808, 792 A.2d 86 (2002) (General Statutes § 53a-3 definition of firearm). Our General Statutes, however, do not define the words defraud, deceive and injure with regard to § 53a-140. Although it is true that an improper instruction on an element of a crime is of constitutional magnitude; id., 806; "[i]t is well established that, when

determining the meaning of a word, it is appropriate to look to the common understanding of the term as expressed in a dictionary. . . . This precept, however, pertains primarily to the situation where no statutory definition is available." (Citations omitted.) *State* v. *Spillane*, 255 Conn. 746, 755, 770 A.2d 898 (2001).

The defendant relies on *State* v. *Brown*, supra, 259 Conn. 799, to support her claim. *Brown*, however, explains why it is not reasonably possible that the court's charge misled the jury. *Brown* concerns a sentence enhancement statute, General Statutes § 53-202k, which provides in relevant part that "[a]ny person who commits any class A, B or C felony and in the commission of such felony uses . . . any firearm, *as defined in section 53a-3* . . . shall be imprisoned . . . ." (Emphasis added.) When it instructed the jury, the court in *Brown* failed to provide the statutory definition of a firearm. Our Supreme Court concluded, however, that a clear constitutional violation that deprived the defendant of a fair trial clearly did not exist, reasoning that "[s]pecific words in a statute need not be defined if they are being used and understood in their ordinary meaning. . . . [T]he definition of words in our standard dictionaries is taken as a matter of common knowledge which the jury is supposed to possess." (Citations omitted; internal quotation marks omitted.) *State* v. *Brown*, supra, 808. "[T]he dictionary definition [of firearm] that we presume was applied by the jury and the definition found in § 53a-3 (19) are essentially the same. Under the circumstances, no constitutional violation could have resulted from the trial court's failure to give the statutory definition to the jury." Id., 809.

When charging the jury, the court adhered to the precept that "[t]he definition of words in our standard dictionaries is taken as a matter of common knowledge which the jury is supposed to possess." (Internal quotation marks omitted.) Id., 808; see also *State* v. *Maresca*,

173 Conn. 450, 460, 377 A.2d 1330 (1977) ("[t]he court did not err in failing to define 'maintain,' 'assist,' and 'custodian,' all terms which were used and might be understood in their ordinary meaning"). Moreover, when the jury had a question regarding the meaning of the word injure, the court provided a supplemental instruction, a procedure well within our rules of practice. The jury did not seek any additional explanation concerning the meanings of defraud or deceive.

In her brief, the defendant cites *State* v. *Yurch*, 37 Conn. App. 72, 80–81, 654 A.2d 1246, appeal dismissed, 235 Conn. 469, 667 A.2d 797 (1995), among other authorities, for the definition of deceive, as well as the Merriam-Webster Online Dictionary, http://www.merriamwebster.com/dictionary/deceive (last visited February 2, 2010), for the definitions of defraud, deceive and injure. The defendant argues that *Yurch* and the dictionary demonstrate that there necessarily is not one commonly used meaning for the terms at issue in this case. The defendant's position is unpersuasive. Many words have varying shades of meaning, depending on the context in which they are used, but, the question presented is whether it was reasonably possible that the jury, using its common sense and life experience, was misled by the court's instruction. We are unwilling to conclude that the jury lacked understanding of words so frequently used in common parlance.

Moreover, the defendant fails to explain how the jury was misled by the court's instruction. The jury knew how to ask for assistance if it did not know the definition of one of the words in the statute. The defendant, therefore, clearly was not denied a constitutional right or a fair trial due to the court's failure to define defraud, deceive or injure in its charge.

### III

The defendant's third claim is that the court imposed her sentence in an illegal manner by considering criminal charges then pending against the defendant in

another geographical area court and the charges of which she was found not guilty in this case. We do not agree.

The court sentenced the defendant to six months in the custody of the commissioner of correction, execution suspended after ninety days, and two years of probation. At the time of sentencing, the court asked the prosecutor about charges pending against the defendant in geographical area number fourteen. The prosecutor responded that those charges involved forgery of a physician's return to work slips in a workers' compensation matter. The defendant then made a lengthy statement to the court. Thereafter the court made the following statement.

"Although the jury acquitted you of the other two charges, the court does believe that you faxed the . . . medical bill . . . to Allstate, despite your testimony to the contrary, and, I think, that [the prosecutor's] argument that you were tripped up by the timing is very indicative of the fact that you did the faxing and not your brother-in-law. I also don't believe your claim that you faxed defendant's exhibit one to Allstate, and that's the two page bill. The transmission line on defendant's exhibit one shows that it was faxed to your home phone or fax number, not to Allstate. And there is no creditable evidence in this case that shows that you faxed it to Allstate. . . .

"The court further believes that the conduct that you engaged in, in count one, was part of a larger scheme on your part to defraud Allstate of $2000. Again, of course, the jury did not convict you of those counts, but I think that from the court's point of view, the great balance of your testimony here, with respect to the material facts, is not creditable. Based upon what the court heard, as far as the evidence is concerned, I do believe that a period of incarceration is appropriate

here. I don't know anything about the workers' comp[ensation] case in Hartford or the forgery case in Hartford, whether you will prevail or won't prevail. *I am not including that as part of my consideration here,* but I do believe that a period of incarceration is warranted for the activity that occurred in this matter in Tolland alone." (Emphasis added.) The court then sentenced the defendant.

Practice Book § 43-22 provides in relevant part: "The judicial authority may at any time correct . . . a sentence imposed in an illegal manner . . . ." "Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates defendant's right . . . to be sentenced by a judge relying on accurate information or considerations solely in the record . . . ." (Internal quotation marks omitted.) *State* v. *McNellis*, 15 Conn. App. 416, 444, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988).

"[A] sentence imposed . . . within statutory limits, is generally not subject to review. . . . It has long been the practice in this state to permit the sentencing court to exercise a wide discretion as to the sources and types of information used to assist it in determining the sentence to be imposed within the limits fixed by law. . . . Such practice facilitates the penal philosophy that sentences ought to be individualized to fit not only the crime but also the criminal. . . . [B]efore making a [sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." (Citations omitted; internal quotation marks omitted.) Id., 445.

A

The defendant claims that the court improperly considered charges that were pending against her in Hart-

ford. The court, however, specifically stated that it had not taken those charges into consideration in sentencing the defendant. We have no reason to doubt the court's representation, and the defendant has provided none. The term of the defendant's sentence is within the statutory limits of the offense for which the defendant was convicted. We, therefore, cannot conclude that the court imposed the defendant's sentence in an improper manner.

B

The defendant also claims that the manner in which the court imposed her sentence was illegal because the court considered the charges for which the jury found the defendant not guilty. The defendant's claim lacks merit.

"Generally, due process does not require that information considered by the trial judge prior to sentencing meet the same high procedural standard as evidence introduced at trial. Rather, judges may consider a wide variety of information." (Internal quotation marks omitted.) *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986). "To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt . . . evidence of crimes for which the defendant was indicted but neither tried nor convicted . . . ." (Citations omitted.) Id., 126. "A sentencing court may legitimately consider the evidence heard at trial . . . ." *State* v. *McNellis*, supra, 15 Conn. App. 450. In this matter, when sentencing the defendant, the court considered evidence that was presented at trial. We, therefore, conclude that the court did not impose the defendant's sentence in an illegal manner.

The judgment is affirmed.

In this opinion the other judges concurred.