******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* GUILLERMO
BALBUENA
(AC 37208)

Sheldon, Prescott and Mihalakos, Js.

*Argued April 18—officially released September 13, 2016*

(Appeal from Superior Court, judicial district of New
Britain, Alander, J.)

*Lisa A. Vanderhoof*, assigned counsel, for the appel-

lant (defendant).

*Jean E. Silverio*, certified legal intern, with whom were *Harry Weller*, senior assistant state's attorney, and, on the brief, *Brian Preleski*, state's attorney, and *Brett J. Salafia*, senior assistant state's attorney, for the appellee (state).

*Opinion*

MIHALAKOS, J. The defendant, Guillermo Balbuena, appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a. On appeal, the defendant claims that the court erred in denying his motion for judgment of acquittal. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On January 8, 2011, the victim, Erick Cruz, was at his aunt's home in New Britain for a Three Kings Day celebration. While the victim and his family were celebrating, the defendant, his brothers Yair Balbuena and Mario Balbuena, and three other individuals arrived at the scene in two vehicles. Upon their arrival, the defendant's group began to vandalize a car belonging to the victim's brother, Mario Cruz, who was also at the Three Kings Day celebration. After receiving a call from Cruz, the victim and his cousin, Marcelino Bermejo, ran downstairs and emerged from the building, whereupon they encountered the defendant's group.

The defendant and his five cohorts advanced on the victim. In response to the group's advance, the victim began to back away toward a garage located behind the building and urged Bermejo to call the police. Bermejo ran back into his aunt's home to make the telephone call. The defendant's group brandished weapons, which included two guns and three knives, and said to the victim that they were going to kill him, and asked him, "how does it feel to have a pistol in your face?" The group pursued the victim around a car, around the garage, and back into the street.[1] Members of the group then shot at the victim multiple times, and one of the shots struck the victim in the neck, exiting through his jaw.

Santa Bermejo, a cousin of the victim and sister of Marcelino Bermejo, was in a building across the street when she heard a gunshot. In response to the noise, she stepped onto the second floor porch and lay on her stomach where she could look through a gap between the floor and the solid railing. From her location on the porch, Santa Bermejo was able to observe and identify the defendant and his two brothers. She also saw the defendant shoot at the victim. Once the defendant and his cohorts fled, she went onto the street. Shortly thereafter, Marcelino Bermejo and Santa Bermejo found the victim lying on the ground, bleeding from his wounds. The police and ambulance arrived, and the victim was taken to Saint Francis Hospital and Medical Center in Hartford, where he was treated for his injuries.

The victim gave two statements to the police following the incident, one at the hospital on January 13, 2011, and one at the New Britain Police Department on May 18, 2011. On both occasions, the victim stated that the

defendant was one of the six individuals who had pursued him, that two of the individuals had guns, and that the defendant's brother, Mario Balbuena, was the individual who had shot him. The victim was unclear as to the defendant's exact role in the pursuit; on January 13, 2011, the victim identified the defendant as the other individual with a gun, while on May 18, 2011, the victim was uncertain if the defendant had a gun.

The defendant was arrested on October 3, 2012, and charged with criminal attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a, conspiracy to commit murder in violation of §§ 53a-48[2] and 53a-54a,[3] assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). Following a jury trial, the defendant was convicted of conspiracy to commit murder and acquitted of all other charges. The court subsequently denied the defendant's motion for judgment of acquittal and sentenced the defendant to eleven years incarceration. The defendant filed this appeal. Additional facts will be set forth as necessary.

The defendant claims that there was insufficient evidence to support his conviction for conspiracy to commit murder. First, the defendant argues that the jury lacked sufficient evidence to find that he and his coconspirators had entered into an agreement to kill the victim. Specifically, he contends that the jury lacked sufficient evidence to find the existence of a formal or express agreement, of a dispute between himself and the victim from which the jury reasonably could have inferred that an implied agreement was made to kill the victim, or of a swiftly formed agreement between the defendant and his coconspirators to murder the victim at the time of the incident. Second, the defendant claims that the jury lacked sufficient evidence to find that he had the requisite specific intent to kill the victim. We disagree.

We first set forth our standard of review and the relevant law. "The standard of appellate review of a denial of a motion for a judgment of acquittal has been settled by judicial decision. . . . The issue to be determined is whether the jury could have reasonably concluded, from the facts established and the reasonable inferences which could be drawn from those facts, that the cumulative effect was to establish guilt beyond a reasonable doubt . . . . The facts and the reasonable inferences stemming from the facts must be given a construction most favorable to sustaining the jury's verdict." (Internal quotation marks omitted.) *State* v. *Bonner*, 110 Conn. App. 621, 636, 955 A.2d 625, cert. denied, 289 Conn. 955, 961 A.2d 421 (2008). "In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second,

we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Taft*, 306 Conn. 749, 755–56, 51 A.3d 988 (2012).

When evaluating the sufficiency of the evidence, "[t]here is no distinction between direct and circumstantial evidence so far as probative force is concerned . . . . Indeed, [c]ircumstantial evidence . . . may be more certain, satisfying and persuasive than direct evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Jackson*, 257 Conn. 198, 206, 777 A.2d 591 (2001). Therefore, "the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence." (Internal quotation marks omitted.) *State* v. *Crump*, 43 Conn. App. 252, 256, 683 A.2d 402, cert. denied, 239 Conn. 941, 684 A.2d 712 (1996).

"To prove the crime of conspiracy, in violation of § 53a-48, the state must establish beyond a reasonable doubt that an agreement existed between two or more persons to engage in conduct constituting a crime and that subsequent to the agreement one of the conspirators performed an overt act in furtherance of the conspiracy." (Internal quotation marks omitted.) Id., 257–58. "The state must also show intent on the part of the accused that conduct constituting a crime be performed." (Internal quotation marks omitted) *State* v. *Taft*, supra, 306 Conn. 756. Here the crime underlying the conspiracy is murder. "Intent to cause the death of a person is an element of the crime [of murder] and must be proved beyond a reasonable doubt. . . . Intent may, however, be inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Citations omitted.) *State* v. *Crump*, supra, 43 Conn. App. 257.

"The existence of a formal agreement between parties need not be proved. It is sufficient to show that they are knowingly engaged in a mutual plan to do a forbidden act. . . . Because of the secret nature of a conspiracy, a conviction is usually based on circumstantial evidence. . . . The state need not prove that the defendant and a coconspirator shook hands, whispered in each other's ear, signed papers, or used any magic words such as we have an agreement." (Citations omitted; internal quotation marks omitted.) Id., 258. Rather, "[t]he requisite agreement or confederation may be inferred from proof of the separate acts of the individu-

als accused as coconspirators and from the circumstances surrounding the commission of these acts. . . . Further, [c]onspiracy can seldom be proved by direct evidence. It may be inferred from the activities of the accused persons." (Internal quotation marks omitted.) *State* v. *Green*, 261 Conn. 653, 669, 804 A.2d 810 (2002). Moreover, "[a] conspiracy can be formed in a very short time period . . . ." Id., 671.

In addition, "[t]he size of a defendant's role does not determine whether that person may be convicted of conspiracy charges. Rather, what is important is whether the defendant willfully participated in the activities of the conspiracy with knowledge of its illegal ends. . . . Participation in a single act in furtherance of the conspiracy is enough to sustain a finding of knowing participation." (Citations omitted; internal quotation marks omitted.) *State* v. *Boykin*, 27 Conn. App. 558, 565, 609 A.2d 242, cert. denied, 223 Conn. 905, 610 A.2d 179 (1992).

In *State* v. *Taft*, supra, 306 Conn. 749, our Supreme Court considered a claim of insufficient evidence to support a conviction of conspiracy to commit murder in factually similar circumstances to the present case. In *Taft*, a group of individuals chased after the victim. Two of the individuals, including the defendant, had guns. Someone in the pursuing group shouted, " '[l]ets get this mother fucker,' " and gunfire ensued. Id., 754. The Supreme Court held that sufficient evidence of a conspiracy is found if the coconspirators are armed aggressors who act in concert to pursue the victim. Id., 757–58. Specifically, the Supreme Court held that shouting " '[l]et's get this mother fucker,' " pursuing the victim while carrying weapons, and firing the weapons was sufficient evidence to establish the existence of an agreement to attack the victim. Id., 757. In addition, the court in *Taft* held that even if the defendant was not armed during the pursuit, the jury reasonably could have found that the defendant was aware that some of the pursuers were armed and would use their weapons in the pursuit, and, thus, the defendant's active participation was strong evidence of his agreement to the conspiracy. Id., 757–58. Therefore, the court concluded that "there was sufficient evidence to support the defendant's conviction for conspiracy to commit murder." Id., 761.

In the present case, our review of the record in the light most favorable to sustaining the verdict discloses that sufficient evidence existed from which the jury could have found beyond a reasonable doubt that the defendant conspired to kill the victim. First, sufficient evidence existed from which the jury reasonably could have determined that there was an agreement among the defendant and his cohorts to kill the victim. The defendant arrived with five other individuals, at the same time, outside the home of the victim's aunt and

began vandalizing a car owned by the victim's brother. The defendant argues that this was an occurrence by chance and not actions designed and intended to lure the victim outside. Nevertheless, on the basis of the evidence presented at trial, the jury reasonably could have found that the victim and the Balbuena brothers had known each other for eight years, and that the defendant and his brothers targeted a specific car upon their arrival, suggesting that they knew to whom the vehicle belonged. Such evidence thus supported the inference that the group's acts of vandalism had not been directed at a random vehicle, but instead had been directed at the specific vehicle in order to get the attention of those at the Three Kings Day celebration, including the victim. The jury had sufficient evidence to support the reasonable inference that it was not mere coincidence that the defendant and his cohorts arrived on the scene together and vandalized the car of the victim's brother.

Moreover, upon seeing the victim, the group, armed with guns and knives, began to advance on, and subsequently to pursue, the victim. See *State* v. *Taft*, supra, 306 Conn. 757–58 (sufficient evidence of conspiracy found when coconspirators are armed aggressors who act in concert to pursue victim). Members of the group taunted the victim, stating "how does it feel to have a pistol in your face," and that they were going to kill him. The latter statement describes precisely what the group attempted to do; they fired multiple shots in the direction of the victim, one of which hit and severely injured him. See *State* v. *Young*, 157 Conn. App. 544, 553, 117 A.3d 944 (arriving at scene together, firing weapons simultaneously, and fleeing scene together was sufficient evidence for jury to conclude beyond reasonable doubt that defendant and his cohort entered into agreement to commit assault in first degree), cert. denied, 317 Conn. 922, 118 A.3d 549 (2015). Accordingly, we conclude that a jury reasonably could have found that taunting the victim that they were going to kill him and advancing on the victim with weapons in hand indicated that the defendant and his cohorts agreed to kill the victim.

Furthermore, even if the defendant was not armed with a gun while he and his group pursued the victim, testimony reveals that the group's weapons, two of which were guns, were visible during the pursuit. The jury thus reasonably could have inferred that the defendant was aware that some of his cohorts were armed and intended to use their weapons. Aware of this information, the defendant actively participated in the pursuit, which is strong circumstantial evidence of the defendant's agreement with the others to engage in this pursuit with the purpose of killing the victim. See *State* v. *Taft*, supra, 306 Conn. 757–58. Therefore, the jury reasonably could have determined that the defendant and his cohorts entered into an agreement to kill the

victim.

The defendant's remaining argument focuses on the lack of sufficient evidence to demonstrate the defendant's specific intent to kill the victim.[4] The words yelled by the group that they were going to kill the victim, coupled with their concerted activities, of which the defendant was aware and participated in, are sufficient evidence from which the defendant's intent may be inferred. Whether the defendant himself uttered these words is of no consequence, because these words were accompanied by the defendant and his cohorts' active pursuit of the victim for some distance and their shooting in his direction. The jury reasonably could have inferred from the circumstantial evidence, if viewed together, that the defendant actively participated in the pursuit with the specific intent to kill the victim.

The defendant relies, however, on *State* v. *Green*, supra, 261 Conn. 653, to support his claim of insufficiency of the evidence. In *Green*, several members of a gang, armed with guns, approached four individuals, including the defendant, Charles Green, and Duane Clark. Id., 657–58. In response, Clark said, " 'shoot the motherfucker.' " Id., 658. Shots were fired, and one of the gang members was fatally wounded. Id. Green and Clark were tried together for murder and conspiracy to commit murder, and although Clark was found not guilty of both counts, Green was found guilty of both. Id., 659. Our Supreme Court found that the evidence was insufficient to prove that Green conspired to commit murder because of the inconsistent verdicts. Id., 669–71.

The present case is distinguishable from *Green*. In *Green*, the Supreme Court noted that the testimony offered at trial indicated that Green and his cohorts were accosted by a group of aggressors, Clark yelled to shoot, and, in response, some members of the group simultaneously reached for their guns and opened fire. Id., 658. In the present case, the entire group engaged in extended activity demonstrative of its being the aggressor with the collective intent to kill the victim. In addition, in *Green*, the alleged coconspirators were tried together, and one was found guilty while the other was not. Thus, the Supreme Court concluded that "the jury rejected the state's claim that [Green] had conspired with Clark to kill [the victim]."[5] Id., 671. In the present case, the defendant was not tried together with any of his alleged coconspirators in a single trial and did not receive a factually or legally inconsistent verdict from another verdict rendered from the same jury.

The defendant also relies on *State* v. *Pond*, 315 Conn. 451, 108 A.3d 1083 (2015), to support his claim that his being found guilty of conspiracy to commit murder is inconsistent with his being found not guilty of the charges of criminal attempt to commit murder, assault in the first degree, and criminal possession of a firearm. His reliance is misplaced. In *Pond*, our Supreme Court

concluded that "[t]he commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes. . . . [This reflects the fact that] [t]he crime of conspiracy . . . has characteristics and ingredients which separate it from all other crimes. . . . The prohibition of conspiracy is directed not at the unlawful object . . . but at the process of agreeing to pursue that object. . . . A defendant can be convicted of conspiracy . . . even if the criminal plot never comes to fruition." (Citations omitted; internal quotation marks omitted.) Id., 473–74.

In the present case, the defendant's acquittal on the substantive charges does not undermine his conviction for conspiracy to commit murder. The crime of conspiracy to commit murder requires that the defendant agree to commit murder, perform an overt act in furtherance of committing murder, and hold the requisite intent to commit murder. General Statutes §§ 53a-48 and 53a-54a. A jury reasonably could have found that the defendant agreed to and held the requisite specific intent to kill the victim based on his active participation in a group that collectively made threatening comments to the victim, brandished weapons, pursued the victim, and shot at the victim. Proof of the substantive crimes, on the other hand, required the jury to find, inter alia, that the defendant himself had performed an action or omission constituting a substantial step toward causing the victim's death; see General Statutes §§ 53a-49 (a) (2) and 53a-54a; had caused injury to the victim; see General Statutes § 53a-59 (a) (1); or had possessed a firearm. See General Statutes § 53a-217. None of these is an element of the crime of conspiracy to commit murder, and therefore, the jury's verdict was not inconsistent with its conclusion that the defendant was guilty of conspiracy to commit murder.

Viewing this evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found that the evidence established beyond a reasonable doubt that the defendant was guilty of conspiracy to commit murder. Therefore, the trial court properly denied the defendant's motion for a judgment of acquittal.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The victim's testimony and his police statement vary slightly on this point. In his police statement on May 18, 2011, the victim stated that some of the men yelled, "how does it feel to have a pistol in your face?" The group then started to chase the victim while yelling, and subsequently shot the victim. In his testimony, the victim stated that he started to back away as the group came toward him. When the group moved in front of the victim, the victim walked around the garage, and at this point the group made their statements. The group continued to pursue the victim and then shot him.

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 53a-54a (a) provides in relevant part: "A person is

guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[4] Counsel for the defendant appears to confuse intent with motive, stating that "the state offered no evidence or explanation to the jury as to why the defendant and his brothers would conspire to commit the murder of Erick Cruz; thus there is even less evidence here than in *Green* that can logically and reasonably be construed to support an inference that (1) the defendant intended to conspire to commit the murder of Erick Cruz; (2) the defendant intended to commit the murder of Erick Cruz . . . ." Motive, however, is not an element of the crime of conspiracy to commit murder. Although motive may strengthen the state's case, its absence does not require the court to grant a motion for judgment of acquittal. See *State* v. *Pinnock*, 220 Conn. 765, 773, 601 A.2d 521 (1992).

[5] The Supreme Court in *Green* noted that the evidence arguably could have supported a finding that Green had agreed with his cohorts to shoot the gang members. Green and Clark, however, were tried together, and the jury found Clark not guilty and Green guilty. On the basis of the inconsistent verdicts, the Supreme Court concluded that the evidence was insufficient to find Green guilty of conspiracy to commit murder. *State* v. *Green*, supra, 261 Conn. 669–70.