******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* JAMES SEELEY
(SC 19790)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Syllabus*

Convicted of the crime of forgery in the second degree, the defendant appealed. The defendant, who had been responsible for the dally operations of a company, M Co., sought to purchase a vehicle in the name of the company. Because the defendant did not wholly own M Co., the dealership selling the vehicle required a certified resolution signed by at least two different corporate officers. The defendant subsequently sent a certified resolution to the dealership purporting to contain the signature of a second corporate officer, B, through a fax machine located in the home of the defendant's father. Following a review of corporate bank records, B discovered certain unauthorized charges connected to the dealership. During a subsequent meeting of M Co.'s shareholders, the defendant referred to the purchase as a mistake and was visibly upset. B then pursued a criminal complaint against the defendant, claiming that B's signature was forged on the certified resolution. Following presentation of the state's case-in-chief during a trial to the court, the defendant filed a motion for a judgment of acquittal, which the court denied. Following the defendant's presentation of his case and the close of evidence, the trial court found the defendant guilty and rendered judgment of conviction. On appeal, the defendant claimed, inter alia, that this court should exercise its supervisory authority over the administration of justice to abandon the waiver rule, which provides that a criminal defendant may secure appellate review of a trial court's denial of a motion for a judgment of acquittal following the state's case-in-chief only by forgoing the right to put on evidence, in the context of bench trials. The defendant also claimed, in the alternative, that the state's evidence was insufficient to support his conviction. *Held*:

1. This court declined to consider whether to abandon the waiver rule in the context of bench trials, the evidence presented by the state during its case-in-chief having been sufficient to establish the defendant's guilt beyond a reasonable doubt.

2. The state's evidence was sufficient to support the defendant's conviction of forgery in the second degree: the state presented sufficient evidence to prove beyond a reasonable doubt that the defendant forged B's signature on the certified resolution in light of, inter alia, B's repeated denial of authorship of the signature in question, testimony from the state's handwriting experts, the fact that only the defendant stood to benefit from the forged signature, and the defendant's demeanor when confronted at the meeting of M Co.'s shareholders; moreover, the state presented sufficient evidence to establish that the defendant acted with an intent to deceive the dealership, the defendant having been aware of the requirement of a second signature and having faxed the certified resolution rather than delivering it to the dealership in person to circumvent the dealership's policy of requiring in person proof of identification for business purchases.

Argued January 26—officially released June 27, 2017

*Procedural History*

Substitute information charging the defendant with the crime of forgery in the second degree, brought to the Superior Court in the judicial district of Danbury geographical area number three, and tried to the court, *Russo, J.*, which denied the defendant's motion for a judgment of acquittal and rendered judgment of guilty, from which the defendant appealed. *Affirmed.*

*Norman A. Pattis*, with whom were *Christopher La Tronica* and, on the brief, *Kevin Smith*, for the appel-

lant (defendant).

*Matthew A. Weiner*, assistant state's attorney, with whom were *Deborah P. Mabbett*, senior assistant state's attorney, and, on the brief, *Stephen J. Sedensky III*, state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The principal issue in this appeal is whether, in a trial to the court, the state presented sufficient evidence in its case-in-chief to support the conviction of the defendant, James Seeley, of forgery in the second degree in violation of General Statutes § 53a-139 (a) (1)[1] in connection with a document created to facilitate the purchase of a vehicle on behalf of a corporation.[2] In challenging the sufficiency of the evidence presented, the defendant claims that we should exercise our supervisory authority over the administration of justice to abandon the waiver rule[3] in the context of court trials, and review the trial court's denial of his motion for judgment of acquittal following the state's case-in-chief, despite the fact that he elected to introduce evidence of his own. We need not reach the defendant's claim regarding the waiver rule because we conclude that there was sufficient evidence in the state's case-in-chief to support the defendant's conviction. Accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In 2009, the defendant and Joshua Bennett formed a company, Miller & Stone, Inc., for the purpose of manufacturing and selling dietary supplements. By May, 2010, the shareholders of Miller & Stone, Inc., were the defendant, Bennett, Sandra Scott, E. Duane Meyer, and Sean Macpherson. The defendant ran the daily operations of Miller & Stone, Inc., while Bennett developed and designed its products. Although the other shareholders did not actively participate in management, their consent was required prior to any substantial expenditure of funds. Despite the efforts of the defendant and Bennett, Miller & Stone, Inc., never became profitable and was valued at less than $100,000.

In June, 2010, the defendant went to BMW of Ridgefield (dealership) to purchase a vehicle in the name of Miller & Stone, Inc. In order to do so, the defendant was required to submit his driver's license and numerous documents to the dealership, including a "Certified Resolution for Business Entity" (certified resolution), which is the document at issue in the present case. Because the defendant sought to purchase a vehicle in the name of Miller & Stone, Inc., a company he did not wholly own, the dealership required a certified resolution signed by at least two different corporate officers. Generally, the dealership required the parties signing a certified resolution to provide identification upon submission. The certified resolution in the present case, however, was sent through a fax machine located at the home of the defendant's father, Ian Seeley, and the dealership did not subsequently request identification. On June 28, 2010, the defendant completed the sale in the name of Miller & Stone, Inc., and took possession of a BMW M6 automobile (automobile).

Shortly thereafter, Bennett began receiving calls from customers who were interested in products from Miller & Stone, Inc., but who complained that the defendant was not following through on orders. A subsequent review of corporate bank records, which previously had been sent to the defendant's home, revealed certain unauthorized charges and checks sent to the dealership. After seeing these expenditures, Bennett and Sandra Scott's husband, Andrew Scott, drove to the dealership, where they discovered that the automobile had been purchased in the name of Miller & Stone, Inc. They informed the dealership that the purchase was unauthorized.

Bennett, Andrew Scott, Macpherson, Meyer, and the defendant subsequently met to discuss the unauthorized expenditures. During this meeting, the defendant was "[v]ery upset," "crying," and "apologetic," and referred to the purchase of the automobile as "a mistake . . . ." The defendant was told that he needed either to return the automobile or list himself on the title. The defendant agreed and, on the following day, returned the automobile to the dealership. The automobile was subsequently resold at auction for $18,000 less than the amount owed by Miller & Stone, Inc., on the loan.

In early 2011, Bennett met with George Bryce, a detective with the Bethel Police Department, to review potential evidence in connection with the defendant's purchase of the automobile in the name of Miller & Stone, Inc. Convinced that one of the three signatures that appeared on the certified resolution purported to be but was not actually his, Bennett pursued a criminal complaint.

The state charged the defendant with forgery in the second degree in violation of § 53a-139 (a) (1). The case was subsequently tried to the court, *Russo, J.* Following the presentation of the state's case-in-chief, the defendant filed a motion seeking a judgment of acquittal, which was denied. Following the presentation of evidence by the defendant, the court found the defendant guilty as charged. The court subsequently rendered a corresponding judgment of conviction and sentenced the defendant to five years incarceration, execution suspended, and three years probation with special conditions. This appeal followed.

On appeal, the defendant asks us to exercise our supervisory powers over the administration of justice to hold the waiver rule inapplicable to court trials, and to consider his claim that the trial court improperly denied his motion for judgment of acquittal at the close of the state's case-in-chief. In the alternative, the defendant claims that the evidence, considered in its entirety, was insufficient to find him guilty of forgery in the second degree. Additional relevant facts and procedural history will be set forth as necessary.

## I

We initially address the defendant's request that we abandon the waiver rule in the context of court trials.[4] "The so-called waiver rule provides that, when a motion for [a judgment of] acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without [forgoing] the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 220, 856 A.2d 917 (2004); see also *State* v. *Papandrea*, 302 Conn. 340, 350 and n.5, 26 A.3d 75 (2011); *State* v. *Rutan*, 194 Conn. 438, 440, 479 A.2d 1209 (1984).

We need not, however, presently consider abandoning the waiver rule in the context of court trials because, "[b]ased on a review of the state's evidence only, the state ha[s] proven beyond a reasonable doubt that the defendant was guilty of [the crime charged]. On its merits, the defendant's claim is a challenge to the sufficiency of the evidence at the end of the state's case. Our review of the state's evidence is limited to . . . whether [a finder of fact] could have reasonably concluded, upon the facts established and the inferences reasonably drawn therefrom, that the cumulative effect of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Calonico*, 256 Conn. 135, 139–40, 770 A.2d 454 (2001); see also *State* v. *Perkins*, supra, 271 Conn. 230 and n.12. Accordingly, we leave for another day the issue of whether we should abandon the waiver rule in the context of court trials.

## II

We turn next to the defendant's claims regarding the sufficiency of the state's evidence. The defendant claims that the evidence was insufficient to support a conviction of forgery in the second degree for two reasons. First, he contends that the state failed to present evidence from which a fact finder reasonably could have concluded that the defendant forged the signature, namely, because the handwriting evidence was inconclusive and did not establish beyond a reasonable doubt that the defendant committed a forgery. Second, he claims that the state presented insufficient evidence from which a fact finder could have concluded that the defendant forged with intent to deceive. We address each of these claims in turn.

"The standard of review [that] we [ordinarily] apply to a claim of insufficient evidence is well established. In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First,

we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a [fact finder's] factual inferences that support a guilty verdict need only be reasonable. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . [I]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact . . . but the cumulative impact of a multitude of facts [that] establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Taylor*, 306 Conn. 426, 431–32, 50 A.3d 862 (2012); cf. *State* v. *Balbuena*, 168 Conn. App. 194, 199, 144 A.3d 540 (standard of appellate review applicable to denial of motion for judgment of acquittal), cert. denied, 323 Conn. 936, 151 A.3d 384 (2016).

To establish that a person is guilty of forgery in the second degree in violation of § 53a-139 (a), the state must prove that the defendant (1) forged a written instrument or issues or possesses a forged instrument knowing it to be forged, and (2) did so with the intent to deceive another. See, e.g., *State* v. *DeCaro*, 252 Conn. 229, 240–41, 745 A.2d 900 (2000); *State* v. *Etienne*, 103 Conn. App. 544, 558, 930 A.2d 726 (2007); *State* v. *Henderson*, 47 Conn. App. 542, 551, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998).

A

We begin with the defendant's claim that the evidence was insufficient with respect to the act element of forgery in the second degree, namely, that he forged a written instrument or "possesse[d] any written instrument which he knows to be forged . . . ." General Statutes § 53a-139 (a). The defendant contends that the state's evidence with respect to this element was inconclusive, at best, in that (1) the sum of the two experts' testimony

cannot be said to have reasonably contributed to a finding of guilt, (2) Bennett's testimony was purely speculative, and (3) the employees of the dealership could not testify about how the documents had been prepared or signed, rendering their testimony inconclusive as to his guilt. In response, the state contends that the fact finder reasonably could have concluded that Bennett's signature was forged in light of the testimony from Bennett, Bryce, and the state's two handwriting experts. The state also claims that the fact finder reasonably could have concluded that it was the defendant who forged Bennett's signature. We agree with the state and conclude that there was sufficient evidence to prove beyond a reasonable doubt that the defendant forged Bennett's signature on the certified resolution.

First, the fact finder reasonably could have concluded that the third signature on the certified resolution that purported to belong to Bennett was forged in light of the testimony from Bennett, Bryce, and the state's handwriting experts. During Bennett's testimony, he categorically denied that the third signature was his. Specifically, although Bennett conceded that it was possible that two of the signatures on the certified resolution were his because he often signed documents for the defendant under a time constraint without first reading them, when asked, Bennett repeatedly denied authorship of the third signature on the certified resolution. In its decision, the trial court credited Bennett as remaining consistent, with a demeanor that was emphatic when he stated that the signature under personal guarantor was not his and that he did not remember signing it.

Second, Bryce, the lead police investigator with respect to the allegations against the defendant, testified. During the investigation, Bryce called Bennett to ask him about the certified resolution that contained his purported signatures. Bryce testified that Bennett stated that "he did not recall ever signing any paperwork putting that purchase on the company." As to that conversation, Bryce testified that he "believe[d] that [Bennett] did not knowingly have anything to do with the purchase of the [automobile] in the company's name." Further, Bryce met with Bennett and showed him the signatures on the certified resolution. Although Bennett did not recall providing any of the signatures, he specifically pointed to the third signature and stated that it definitely was not his.

Third, the state's two handwriting experts testified that the third signature on the document did not match the handwriting provided on Bennett's exemplars. The first expert, Greg Kettering, reviewed the signatures contained in the certified resolution. He did so by comparing the signatures to handwriting exemplars provided by Bennett. When examining the faxed copy, Kettering was unable to determine whether the third

signature belonged to Bennett because it had been rendered illegible by the fax process. Once granted access to the original document, Kettering concluded, however, that the first two signatures shared a common authorship, but the third signature did not share a common authorship with the other two signatures. He also determined that the third signature did not share a common authorship with Bennett's exemplars, whereas the first two did. Finally, Lisa Ragaza, a forensic examiner responsible for the technical review of Kettering's work, reached the same conclusions as had Kettering.

On review, we defer to the fact finder's assessment of a witness' character and demeanor. See, e.g., *State* v. *Trine*, 236 Conn. 216, 227, 673 A.2d 1098 (1996). Here, the trial court, sitting as the finder of fact, credited the emphatic and consistent nature of Bennett's testimony that the third signature was not his. Accordingly, from these facts, the trial court reasonably found that, with respect to the question of authenticity of Bennett's signature, the state had "easily carried its burden of proving beyond a reasonable doubt that someone other than . . . Bennett affixed the name Josh Bennett to the bottom of the [document]."

An ample amount of circumstantial evidence also supported the trial court's finding that it was the defendant who had forged Bennett's signature, namely, testimony provided by Bennett, Katherine Ann Boehn and Cynthia Cardinal-Palanzo, employees of the dealership, and Ian Seeley. "When evaluating the sufficiency of the evidence, [t]here is no distinction between direct and circumstantial evidence so far as probative force is concerned . . . . Indeed, [c]ircumstantial evidence . . . may be more certain, satisfying and persuasive than direct evidence. . . . Therefore, the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence." (Citation omitted; internal quotation marks omitted.) *State* v. *Balbuena*, supra, 168 Conn. App. 200; see, e.g., *State* v. *Jackson*, 257 Conn. 198, 206, 777 A.2d 591 (2001). First, the defendant drove the automobile and was listed as the designated driver of the automobile on the document at issue. Thus, it was only the defendant who stood to benefit from the forged signature. Also, Bennett testified about the meeting at which the defendant was confronted about the unauthorized purchase of the automobile. Bennett described the defendant, as "upset," "crying," and "apologetic," during this meeting and testified that the defendant referred to the purchase as a "mistake . . . ." From this, the fact finder reasonably could have inferred a consciousness of guilt and concluded that the defendant was responsible for the forgery. Second, Boehn and Cardinal-Palanzo testified that a second signature on the certified resolution was necessary to complete the purchase transaction so that the defendant could purchase a vehicle. They also noted the dealer-

ship's policy of alerting a customer to missing signatures on its documents, from which the trial court reasonably could have inferred that the defendant was aware that a second signature was needed on the documents to complete the purchase. Third, Ian Seeley testified that the fax number on the certified resolution faxed to the dealership matched the fax number from the machine at his home, a location at which the defendant frequently worked. Viewing this circumstantial evidence in the light most favorable to sustaining the court's finding of guilt; see, e.g., *State* v. *Taylor*, supra, 306 Conn. 432; we conclude that the fact finder reasonably could have inferred that it was the defendant who had forged Bennett's signature on the certified resolution, which he faxed to the dealership.

B

Having determined that the trial court reasonably could have found beyond a reasonable doubt that the defendant had forged the signature on the certified resolution, we turn to the defendant's claim with respect to the second element, namely, that the state failed to prove beyond a reasonable doubt that he forged Bennett's signature *with the intent to deceive*. Distinguishing *State* v. *Dickman*, 119 Conn. App. 581, 989 A.2d 613, cert. denied, 295 Conn. 923, 991 A.2d 569 (2010), the defendant claims that that the record does not contain sufficient evidence to allow the finder of fact to infer the requisite specific intent to sustain a conviction of forgery in the second degree. In response, the state contends that the fact finder reasonably could have found that the defendant acted with the intent to deceive the dealership in forging Bennett's name. Additionally, the state contends that *Dickman* supports the trial court's ruling. We agree with the state and conclude that the trial court reasonably could have concluded that, in forging Bennett's signature, the defendant acted with the intent to deceive the dealership into believing that more than one member of Miller & Stone, Inc., had consented to his purchase of the automobile.

"As we frequently have observed, [i]ntent is generally proven by circumstantial evidence because direct evidence of the accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Internal quotation marks omitted.) *State* v. *Nash*, 316 Conn. 651, 672, 114 A.3d 128 (2015).

The record reveals ample circumstantial evidence to support the fact finder's conclusion that, by forging Bennett's name on the certified resolution, the defendant intended the dealership, as the recipient of the form, to believe that Bennett had, in fact, signed the form. First, Boehn testified that it was company policy that two signatures were required to make a purchase

in the name of a company when an individual does not own 100 percent of the shares. From this, the fact finder reasonably could have inferred that the defendant was aware that a signature from another officer from Miller & Stone, Inc., was required in order to complete the purchase of the automobile. Thus, his forgery of the certified resolution was done with the intent to deceive the dealership into believing that a second officer had authorized the purchase of the automobile on behalf of Miller & Stone, Inc.

We find *State* v. *Dickman*, supra, 119 Conn. App. 588, instructive on this point. In that case, the defendant, Priscilla C. Dickman, was charged with, inter alia, forgery in the third degree in violation of General Statutes § 53a-140[5] in connection with altered documents that were submitted to an insurance company with respect to a claim filed on behalf of her brother-in-law, for whom her husband had been appointed conservator. Id., 582–84. Dickman attempted to obtain information about her brother-in-law's insurance claim following an accident in which he was struck by a motor vehicle. Id., 583. After the insurance company refused to release information, Dickman faxed the insurance company a probate form, which she later admitted that she had altered by adding her name as a fiduciary and conservator. Id., 583–84, 587. When that form was insufficient, Dickman sent a letter of designation purporting to have been signed by her brother-in-law, authorizing her and her husband to handle his claim with the insurance company. Id., 584. Dickman then presented the insurance company with false information regarding her brother-in-law's injuries and treatments, causing the insurance company to believe it had been presented with a false claim and to pursue criminal proceedings, in which Dickman was subsequently convicted of one count of forgery in the third degree. Id., 584–85.

On appeal, Dickman conceded that she had altered the probate document sent to the insurance company, but claimed that there was insufficient evidence that she had done so with the intent to deceive or defraud. Id., 587. The Appellate Court concluded, however, that there was sufficient evidence to support the jury's finding that Dickman had intended to deceive the insurance company. Id., 588–89. The Appellate Court emphasized that Dickman sent an altered probate form listing herself as her brother-in-law's conservator only after learning that a representative of the insurance company, consistent with corporate policy, would not speak to her unless authorized by the brother-in-law. Id. From this fact, the Appellate Court determined that the "jury reasonably could have concluded that [Dickman] sent the altered probate form to [the insurance company] to circumvent its policy of speaking only to third parties authorized to speak on behalf of claimants." Id., 589. The Appellate Court stated further that the jury "reasonably could have inferred that [Dickman] intended [the

insurance company] to believe that she was [her brother-in-law's] conservator, and, thus, an [insurance] representative could discuss his claim with her. Because [Dickman] was not [her brother-in-law's] conservator, the jury could have concluded, on the basis of the circumstantial evidence, that [Dickman] intended to deceive [the insurance company] by causing it to believe that she was [her brother-in-law's] conservator.'' Id.

Similar to *Dickman*, in the present case, the defendant acted only after being informed that, to purchase the automobile in the name of Miller & Stone, Inc., a second signature was required. Thus, as in *Dickman*, the fact finder in the present case reasonably could have concluded that the defendant forged Bennett's name and faxed the certified resolution to the dealership, rather than bringing it in in person, to circumvent the policy of requiring a second signature with identification for business purchases. The fact finder also reasonably could have inferred that the defendant intended the dealership to believe that Bennett, as an officer of Miller & Stone, Inc., authorized the purchase of the automobile so that the dealership would sell a vehicle to the defendant. Because the signature on the form was not Bennett's, the fact finder could have concluded, on the basis of the circumstantial evidence, that the defendant intended to deceive the dealership by causing it to believe that two separate officers from Miller & Stone, Inc., authorized the purchase of the automobile. Accordingly, we conclude that, considering only the evidence presented in the state's case-in-chief, the state presented sufficient evidence to support the defendant's conviction of forgery in the second degree beyond a reasonable doubt.

The judgment is affirmed.

In this opinion the other justices concurred.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Eveleigh, McDonald, Espinosa and Robinson. Although Justice Palmer was not present at oral argument, he has read the briefs and appendices, and has listened to a recording of oral argument prior to participating in this decision.

[1] General Statutes § 53a-139 provides in relevant part: ''(a) A person is guilty of forgery in the second degree when, with intent to defraud, deceive or injure another, he falsely makes, completes or alters a written instrument or issues or possesses any written instrument which he knows to be forged, which is or purports to be, or which is calculated to become or represent if completed: (1) A deed, will, codicil, contract, assignment, commercial instrument or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status . . . .''

[2] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] ''The so-called waiver rule provides that, when a motion for [a judgment of] acquittal at the close of the state's case is denied, a defendant may not secure appellate review of the trial court's ruling without [forgoing] the right to put on evidence in his or her own behalf. The defendant's sole remedy is to remain silent and, if convicted, to seek reversal of the conviction because of insufficiency of the state's evidence. If the defendant elects to introduce evidence, the appellate review encompasses the evidence in toto.''

(Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 220, 856 A.2d 917 (2004).

[4] The defendant acknowledges that this court has upheld the constitutionality of the waiver rule and reaffirmed our adherence to it in the context of jury trials. See *State* v. *Perkins*, 271 Conn. 218, 231, 856 A.2d 917 (2004). Nevertheless, he claims that we should reject the waiver rule in the context of court trials for two reasons. First, the defendant relies on the fact that, as observed in *State* v. *Rutan*, 194 Conn. 438, 440, 479 A.2d 1209 (1984), the denial of a defendant's motion for judgment of acquittal places the defendant in a dilemma—he either must maintain his silence and present no evidence, or expose himself to the waiver rule and present evidence, such that the judge's denial of the initial motion for judgment of acquittal becomes unreviewable. Turning to court trials specifically, the defendant emphasizes the trial judge's role as fact finder, and the risk that the judge's initial denial of the defendant's motion for judgment of acquittal may taint the judge's final deliberations with respect to the defendant's guilt. Specifically, the defendant questions whether a trial judge can disregard his or her prior decision when deciding the case at the close of all the evidence. In response, the state contends that the waiver rule remains valid in the context of court trials because "there is no reason to believe that a Superior Court judge cannot decide whether the evidentiary record, considered in its entirety, supports the defendant's guilt beyond a reasonable doubt, independent from a prior decision that evidence presented during the state's case-in-chief, if construed in the light most favorable to the state, could support each element of the charged crime." The state emphasizes that, "in this case, the trial court, in denying the defendant's motion, frequently acknowledged the different standard applicable to an acquittal motion as compared to a guilty verdict."

[5] General Statutes § 53a-140 (a) provides that "[a] person is guilty of forgery in the third degree when, *with intent to defraud, deceive or injure another*, he falsely makes, completes or alters a written instrument, or issues or possesses any written instrument which he knows to be forged." (Emphasis added.) The specific intent required here is identical to that of § 53a-139.

———————————————